BEEZER, Circuit Judge:
 

 Expeditors International of Washington, Inc. (“Expeditors”) appeals the Bankruptcy Appellate Panel’s affirmance of partial summary judgment and dismissal of Expeditors’ claim. We have jurisdiction pursuant to 28 U.S.C. § 158(d). We hold that Expeditors’ pre-printed invoice terms did not create a security interest in Everex’s property, either explicitly or through course of dealing analysis under Article 2 or Article 9 of the Uniform Commercial Code. We affirm.
 

 I
 

 In August 1991, Expeditors began providing transportation-related services for Debt- or CFLC, Inc., formerly known as Everex Systems, Inc. (“Everex”), including freight forwarding, ocean shipping and customs brokerage. For 17 months prior to Everex’s filing its bankruptcy petition, Expeditors handled Everex’s export and import shipments. Expeditors negotiated with Everex for all of the air freight forwarder rates and services performed by Expeditors’ subsidiaries. Expeditors was in continuous possession, either directly or through its agents, of Everex’s goods.
 

 Expeditors billed Everex on Expeditors’ regular invoices, issued contemporaneously with receipt of the shipments. From August 1991 until January 1993, Expeditors sent approximately 330 invoices that contained fine print on the reverse side entitled “Terms and Conditions of Service.” Section 15 of the invoice states:
 

 15. General Lien on Any Property. The Company shall have a general lien on any and all property (and documents relating thereto) of the Customer, in its possession, custody or control or en route, for all claims for charges, expenses or advances incurred by the company in connection with any shipments of the Customer and if such claim remains unsatisfied for thirty (30) days after demand for its payment is made, the Company may sell at public auction or private sale, upon ten (10) days written notice, sent certified or registered mail with return receipt requested to the Customer, the goods, wares and/or merchandise, or so much thereof as may be necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the amount due to the Company. Any surplus from such sale shall be transmitted to the Customer, and the Customer shall be liable for any deficiency in the sale.
 

 Section 16 states, in pertinent part:
 

 16. In any referral for collection or action against the Customer for monies due to the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee.
 

 Everex never signed the invoices or any agreement with Expeditors regarding the printed invoice terms. The parties neither discussed nor expressly bargained over Sections 15 and 16 of the invoice or any other provision on the reverse side of the invoice. Everex did not object to the invoice terms prior to its bankruptcy, and Expeditors did not attempt to enforce Section 15 of the invoice by asserting a security interest or lien against the shipments prior to the 90-day period before the petition date. On October 29,1992, Expeditors notified an Everex employee that it would be asserting its lien on the Everex goods in its possession until payments were made on outstanding invoices. Before the bankruptcy petition was filed, the parties continued normal business
 
 *1015
 
 operations. At the time of Everex’s bankruptcy filing, Expeditors was in possession of Everex property valued at $81,402.
 
 [1]
 

 Everex filed a voluntary Chapter 11 petition on January 4, 1993. In March 1994, Expeditors filed a complaint in the Bankruptcy Court to determine the validity, priority and extent of the claimed lien. Expeditors alleged that Everex owed a balance of $42,919.33, exclusive of postpetition interest, attorneys’ fees and costs, for 68 past-due invoices dated January through October 1992.
 

 In May 1996, the Official Creditors Committee of CFLC, as a party defendant, and Expeditors filed cross-motions for summary judgment based on stipulated facts. The bankruptcy judge held that Expeditors did not have a security interest in Everex property and that U.C.C. Article 2 did not apply because Expeditors provided a service. The bankruptcy judge granted the Creditors Committee’s partial motion for summary judgment and denied Expeditors’ cross-motion. The bankruptcy court later dismissed Expeditors’ complaint.
 

 Expeditors appealed the bankruptcy court’s decision to the Bankruptcy Appellate Panel (“BAP”). The BAP affirmed the grant of partial summary judgment and dismissal of Expeditors’ complaint. The BAP determined, inter alia, that: (1) the invoices did not amount to an agreement for a security interest; (2) Expeditors repeated delivery of invoice terms was not evidence of course of dealing because no security agreement existed that could be supplemented by such evidence; and (3) Article 2 of the U.C.C. did not apply to the service transactions involved.
 
 See In re CFLC, Inc.,
 
 209 B.R. 508, 513-16 (9th Cir.BAP 1997). Because the BAP determined that Expeditors did not have a security interest in Everex’s property, it did not reach the question whether the transfer of the security interest was subject to preference under § 547(c)(5) of the Bankruptcy Code.
 
 [2]
 
 This timely appeal followed.
 

 II
 

 We review de novo decisions of the BAP.
 
 See In re Mantle,
 
 153 F.3d 1082, 1084 (9th Cir.1998). We independently review the bankruptcy court’s rulings on appeal from the BAP.
 
 See id.
 
 We review the bankruptcy court’s conclusions of law de novo and its factual findings for clear error.
 
 See id.; In re Claremont Acquisition Corp., Inc.,
 
 113 F.3d 1029, 1031 (9th Cir.1997).
 

 III
 

 Article 2 of the U.C.C. applies only to transactions involving goods, not services.
 
 See
 
 Cal. Com.Code § 2102 (“this division applies to transactions in goods”).
 
 [3]
 
 We hold that Article 2 does not apply to the contract between Expeditors and Everex because the parties contracted for services. Therefore, Expeditors’ assertion that invoice terms rendered without objection constitute valid additions to the parties’ contract under § 2-207 is inapplicable.
 
 [4]
 

 IV
 

 Expeditors argues that it has a valid security interest in Everex’s property under Article 9. Expeditors contends that its pre-print-
 
 *1016
 
 ed invoices created an enforceable security interest in Everex’s property in either of two ways: (1) receipt of Expeditors’ invoices without objection by Everex created an agreement that contained the security interest, or (2) the invoices formed a basis for course of dealing analysis to supplement the terms of the contract, thereby including a security interest. We hold that no security interest was formed between the parties.
 

 A
 

 Section 9203 of the California Commercial Code
 
 [5]
 
 outlines three requirements for the attachment and enforceability of a security interest: possession pursuant to an agreement, value given and debtor rights in the collateral. “No magic words or precise form are necessary to create or provide for a security interest so long as the minimum formal requirements of the Code are met.”
 
 In re Amex-Protein Dev. Corp.,
 
 504 F.2d 1056, 1058-59 (9th Cir.1974). “Although the U.C.C. does not specifically state that intention to create a security agreement is an element necessary to creating a valid security agreement, it is clear that intention to do so is required.”
 
 In re Airwest Int’l,
 
 70 B.R. 914, 919 (Bkrtcy.D.Hawai’i 1987). Determining whether the parties intended to create a security interest is a two-step process. The court must find both language in a written agreement that objectively indicates the parties’ intent to create a security interest and the presence of a subjective intent by the parties to create a security interest.
 
 See id.
 
 (citing White & Summers,
 
 Handbook of the Law Under the Uniform, Commercial Code,
 
 § 23-3 (1980)). The intent to create a security interest must appear on the face of a written document executed by the debtor.
 
 See In re Ace Lumber Supply, Inc.,
 
 105 B.R. 964, 968 (Bankr.D.Mont.1989).
 

 Although Expeditors appears to have met the three requirements delineated in the U.C.C., the transactions lack the intent to create a security interest. No documents were executed by Everex manifesting its intention to give Expeditors a security interest. The terms for a security interest appear only on the creditor’s forms. The parties stipulated that they never discussed these terms and that Everex never signed the invoices or any other agreement containing these terms. The invoices alone are insufficient to form a security interest because pre-printed agreements used by a creditor do not create a security interest if the debtor never intended the collateral to be used for this purpose.
 
 See In re Airwest Int’l,
 
 70 B.R.
 
 at
 
 919. In
 
 Airwest,
 
 the debtor pledged certificates of deposit as collateral for a specific debt. The creditor could not utilize the certificates for other debts, even though the creditor’s pre-printed agreement stated that certificates would cover all other indebtedness of the debtor.
 
 See id.
 

 Expeditors contends that Everex’s failure to object to the invoice terms constituted a tacit approval of the creation of a security agreement.
 
 See Expenditors Int’l of Washington, Inc. v. Wang Labs., Inc.,
 
 No. Civ. A. 92-12630-MLW, 1995 WL 791935, at *7-8 (D.Mass. Nov. 14, 1995). The
 
 Wang
 
 court found that invoice terms identical to those at issue here created a security agreement between the parties. The court based its holding on the facts that Wang had ample opportunity to inspect the terms on the invoices, Wang never objected to the terms of the invoices and Wang knowingly employed the services of Expeditors without renegotiating any terms or conditions on the invoices.
 
 See id.
 
 at *7. The court found that these factors sufficiently proved that Wang had accepted Expeditors terms and that Wang had intended to transact business with Expeditors pursuant to these terms.
 

 Although the invoice terms at issue in
 
 Wang
 
 are the same in the instant case, the facts in
 
 Wang
 
 differ. In
 
 Wang,
 
 the parties interacted more extensively than merely delivering pre-printed invoices with shipments. The parties had negotiated two written con
 
 *1017
 
 tracts that described the terms and conditions for air freight shipments and limited the use of certain types of freight as collateral.
 
 See id.
 
 at *9. Expeditors also presented to Wang language identical to the invoices in two credit applications and a bid proposal, although the parties did not complete either agreement.
 
 Id.
 
 at *2. In this case, Expeditors and Everex never discussed the terms on the invoices and never reached any agreements regarding a security interest. Additionally, no documents were executed by Ev-erex that showed Everex’s intention to create a security interest. Expeditors possessed Everex’s property because it was providing freight forwarding services, not because Expeditors was securing Everex’s obligation through a general lien. On these facts, the requirement that both parties demonstrate an intent to create a security interest has not been met. The pre-printed invoice terms did not explicitly create a security interest.
 

 B
 

 Course of dealing is defined as “a sequence of
 
 previous
 
 conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.” Cal. Com.Code § 1205 (emphasis added). An inference of the parties’ common knowledge or understanding that is based upon a prior course of dealing is a question of fact.
 
 See New Moon Shipping Co., Ltd. v. Man B&W Diesel, Ag,
 
 121 F.3d 24, 31 (2d Cir.1997) (citing
 
 Capitol Converting Equip., Inc. v. LEP Transp., Inc.,
 
 965 F.2d 391, 395 (7th Cir.1992)). We review for clear error the BAP’s determination that no course of dealing existed.
 
 See In re Mantle,
 
 153 F.3d 1082, 1084 (9th Cir.1998).
 

 Course of dealing analysis requires a determination whether there exists “an indication of the common knowledge and understanding of the parties.”
 
 New Moon,
 
 121 F.3d at 31. Course of dealing evidence may supplement the agreement by providing evidence of the parties’ intentions, but it should not be used to create an agreement. The bankruptcy court noted this distinction in its ruling: “course of dealing usually refers to previous dealings between parties which indicate the parties previously agreed on a specific issue that is now in dispute.”
 

 Course of dealing analysis is not proper in an instance where the only action taken has been the repeated delivery of a particular form by one of the parties.
 
 See Step-Saver Data Systems, Inc. v. Wyse Technology,
 
 939 F.2d 91, 103-04 (3d Cir.1991). In
 
 Step-Saver
 
 a software producer printed a “Limited Use License Agreement” on the package of each software program provided to its customers.
 
 Id.
 
 at 103. The box-top license stated that “[o]pening this package indicates your acceptance of these terms and conditions.”
 
 Id.
 
 at 97. The software producer argued that the repeated expression of those terms eventually incorporated them into the contract through course of dealing analysis.
 
 See id.
 
 at 96-97.
 

 The
 
 Step-Saver
 
 court gave two reasons for refusing to extend course of dealing analysis to a situation where the parties had not previously taken any action with respect to the matters addressed by the disputed terms.
 
 See id.
 
 at 104. First, the repeated exchange of forms merely indicated the seller’s desire to have these terms included. The failure to obtain the purchaser’s express assent to those terms indicates the seller’s agreement to do business on other terms — those expressly agreed upon by the parties. Second, a seller in multiple transactions will typically have the opportunity to negotiate the precise terms of the parties’ agreement. The seller’s unwillingness or inability to obtain a negotiated agreement reflecting its desired terms strongly suggests that those terms are not a part of the parties’ commercial bargain.
 
 See id.
 

 The facts of
 
 Step-Saver
 
 are similar to the instant case. Although Expeditors’ desire to have a security interest in the goods that it shipped for Everex is evident in the invoice terms, Expeditors did not obtain a negotiated agreement signed by Everex that reflected these terms. This case is the first dispute between the parties. Neither party has taken any action with respect to the creation of a security interest beyond the repeated sending of a particular form. No
 
 *1018
 
 mutual agreement existed as to the creation of a security agreement. Course of dealing analysis is inappropriate under these circumstances.
 

 Other circuits disagree with this conclusion. The Second Circuit has held that the understanding of parties “may be inferred from the resolution of a prior dispute between the parties or from tacit acceptance of a clause repeatedly sent to the offeree in an order confirmation document.”
 
 New Moon,
 
 121 F.3d at 31. The
 
 New Moon
 
 court “extended this doctrine beyond prior dealings involving actual disputes to include evidence that a party has ratified terms by failing to object.”
 
 Id.
 
 (citing
 
 Pervel Indus. v. T M Wallcovering, Inc.,
 
 871 F.2d 7, 8 (2d Cir.1989)). However, because the transactions took place between a purchaser and a manufacturer, and are thereby governed by U.C.C. Article 2, the
 
 Pervel
 
 court’s reasoning was likely premised on Article 2-207
 
 [6]
 
 “battle of the forms” analysis.
 
 [7]
 

 We have already determined that Article 2 does not apply to the transactions between Expeditors and Everex, and thus the holding in
 
 Pervel
 
 is inapposite. Moreover, we decline to apply course of dealing analysis to non-Article 2 transactions in which there has been only a tacit acceptance of a contract term repeatedly sent to the offeree on a pre-printed form. Even under the common law, “[s]ilence in the face of an offer is not an acceptance, unless there is a relationship between the parties or a previous course of dealing pursuant to which silence would be understood as acceptance.”
 
 Southern Cal. Acoustics Co. v. C.V. Holder, Inc.,
 
 71 Cal.2d 719, 722, 79 Cal.Rptr. 319, 466 P.2d 975, 978 (Cal.1969).
 

 The Seventh Circuit has also used course of dealing analysis to supplement the terms of a written agreement.
 
 See Capitol Converting Equip., Inc. v. LEP Transp., Inc.,
 
 965 F.2d 391, 395-96 (7th Cir.1992). In
 
 LEP,
 
 the court determined that a course of dealing was established by the receipt of invoices with terms limiting the seller’s liability, and that course of dealing analysis could be used to “fill the void” where the agreement was silent on the question of liability. The BAP correctly distinguished
 
 LEP
 
 because the term at issue was liability, a term that is inherent to a shipping contract. In the case before us, Expeditors seeks to create an additional term that is not normally within the scope of a carrier contract. A carrier’s lien for charges and expenses is inherent in the contract between Expeditors and Everex because it is provided by California statute.
 
 See
 
 Cal. Com.Code § 7307.
 
 [8]
 
 However, the general lien asserted by Expeditors is not automatically provided by the U.C.C. and is not inherent to a shipping contract.
 
 [9]
 
 Unlike the liability term which was inherent to the shipping contract in
 
 LEP,
 
 the addition of a general lien term would do more than “fill the void,” and, therefore, should not be added to the contract without the mutual agreement of the parties. We hold that it is not proper to use course of dealing analysis to establish a security interest.
 

 
 *1019
 
 V
 

 We hold that Article 2 is inapplicable to the transactions at issue between Expeditors and Everex. We further hold that no Article 9 security interest was created because the mere sending of pre-printed invoices is insufficient either to establish the mutual intent necessary to create a security interest or to require the application of course of dealing analysis.
 

 AFFIRMED.
 

 [1]
 

 . Expeditors later released Everex's property pursuant to a stipulation for adequate protection approved by the bankruptcy court. In exchange Expeditors was granted a Hen against an interest-bearing trust account to the extent that Expeditors could estabHsh that it was a secured creditor of Everex.
 

 [2]
 

 . Because we affirm the BAP’s determination that no valid security interest was created, we need not reach this issue.
 

 [3]
 

 . Although the parties contest whether California or Washington law controls this case, the relevant sections of the U.C.C. do not materially differ between the two states. California has adopted the U.C.C.
 
 See
 
 Cal. Com.Code § 13101 et seq. (West 1998). Sections of the California Commercial Code cited herein are identical to the U.C.C. unless otherwise noted.
 

 [4]
 

 .We need not reach Expeditors’ contention that because the invoice terms did not constitute material alterations, they should become part of the contract pursuant to U.C.C. § 2-207(2). Material alterations apply only to transactions in goods where Article 2 would apply.
 
 See Independent Machinery, Inc. v. Kuehne & Nagel, Inc.,
 
 867 F.Supp. 752, 764 n. 13 (N.D.Ill.1994) (action by shipper against carrier for losses arising out of damages to cargo is not an Article 2 transaction).
 

 [5]
 

 . Section 9203(1) reads, in pertinent part:
 

 ... [a] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless all of the following are applicable:
 

 fa) The collateral is in the possession of the secured party pursuant to agreement....
 

 (b) Value has been given.
 

 (c) The debtor has rights in the collateral.
 

 [6]
 

 . Section 2-207 of the U.C.C. sets out the conditions for the addition of terms in acceptance or confirmation in transactions between merchants.
 

 [7]
 

 . Although the
 
 Pervel
 
 court does not specifically reference § 2-207 of the U.C.C., the cases cited to support its holding that new terms may be incorporated into a contract through their repeated inclusion in purchase order confirmations rely on § 2-207.
 
 See, e.g., Genesco, Inc. v. T. Kakiuchi & Co.,
 
 815 F.2d 840, 845-46 (2d Cir.1987);
 
 Manes Org., Inc. v. Standard Dyeing & Finishing Co.,
 
 472 F.Supp. 687, 690-91 (S.D.N.Y.1979).
 

 [8]
 

 . Cal. Com.Code § 7307 provides, in pertinent part:
 

 A carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law.
 

 [9]
 

 . The U.C.C. does provide a general lien in certain instances, such as a warehousemen's lien.
 
 See
 
 U.C.C. § 7-209. U.C.C. Comment to § 7-307 specifically distinguishes a carrier’s lien from those that automatically provide a general lien ("since carriers do not commonly claim a lien for charges in relation to other goods or lend money on the security of goods in their hands, provisions for a general lien or a security interest similar to those in Section 7-209(1) and (2) are omitted").