INSURANCE COMPANY OF NORTH AMERICA, Plaintiff–Appellant,

v.

NNR AIRCARGO SERVICE (USA), INC., a corporation, Defendant–Appellee.

No. 98–55280.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1999

Filed Feb. 4, 2000

Howard L. Jacobs, Sands Narwitz Forgie Leonard & Lerner, Los Angeles, California, for the plaintiff-appellant.

Therese G. Groff (argued), Michael W. Lodwick (on the brief), Porter, Groff & Lodwick, Long Beach, California, for the defendant-appellee.

Before: FLETCHER, D.W. NELSON, and BRUNETTI, Circuit Judges.

D.W. NELSON, Circuit Judge:

Insurance Company of North America (INA), in its effort to recover for the loss of $257,285.34 in stolen golf balls, appeals the district court's summary judgment order limiting the liability of NNR Aircargo Service (NNR) to $50. INA makes five arguments: (1) invoices are not contracts and there was no course of dealing sufficient to infer the parties' common understanding of the agreement; (2) there was uncertainty with respect to the meaning of the limitation term, "$50 per shipment"; (3) actual possession of the invoice is required to enforce the limitation of liability term contained in it; (4) NNR is subject to the statutory requirements of California Commercial Code § 7204(1) and the Carmack Amendment; and (5) the district court's summary judgment order is inadequate to facilitate appellate review. Although INA also posits that the trial judge failed to view the facts in the light most favorable to it, we do not address this issue as INA neglects to substantiate its assertion.

### FACTUAL AND PROCEDURAL HISTORY

Dunlop Slazenger Corporation (Dunlop), a manufacturer and distributor of sporting goods equipment, contracted with NNR on 48 separate transaction occasions for services related to the importation of golf balls and other goods by ocean carriage. These services included freight forwarding, customs brokering, transporting from the Port of Long Beach to NNR's warehouse in Inglewood, California, and palle-

tizing. On the occasion of the subject theft, Dunlop hired NNR to import 2,703 cartons of golf balls from Kobe, Japan to Long Beach, California.

On February 22, 1996, after completing the ocean carriage, NNR transported the golf balls from the Port of Long Beach to its warehouse in Los Angeles. Because NNR took longer than anticipated to ready the balls for delivery to its final destination, South Carolina, NNR held the cargo for a few days. On February 25, NNR notified Dunlop that a container containing 1,350 cartons of golf balls was stolen from NNR's warehouse. Two weeks after the theft, Dunlop received an invoice for NNR's services.

This invoice was identical in its terms and conditions to those invoices sent by NNR to Dunlop for the 47 previous transactions, the first of which was in November 1993. The front of the invoice states that "NNR handles shipments subject to the terms and conditions set forth on the reverse side of this invoice." Paragraph eight on the reverse side contains a limitation of liability term:

> Limitation of $50 Per Shipment. The Customer agrees that the Company shall in no event be liable for any loss, damage, expense or delay to the goods resulting from the negligence or other fault of the Company for any amount in excess of $50.00 per shipment (or the invoice value, if less) and any partial loss or damage for which the Company may be liable shall be adjusted pro rata on the basis of such valuation. The Customer has the option of paying a special compensation to increase the liability of the Company in excess of $50 per shipment in case of any loss, damage, expense or delay from causes which would make the Company liable, but such option can be exercised only by specific written agreement made with the Company prior to shipment, which agreement shall indicate the limit of the Company's liability and the special compensation for the added liability by it to

be assumed subject to 19 C.F.R. part 111.44.

INA, Dunlop's insurer, contests the validity of this $50 liability limitation.

On February 6, 1997, INA, standing in the shoes of Dunlop filed a complaint against NNR, for damages arising from the theft of the golf balls; INA paid Dunlop $257,285.34 for the non-recovered golf balls and for duty and ocean freight charges. INA then filed a Motion for Summary Judgment on September 12, 1997. Seven days later, NNR responded by filing its Motion for Partial Summary Judgment. The district court granted NNR's motion and ordered that NNR's liability be limited to $50. We affirm.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *See Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir. 1998). This review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *See Ghotra v. Bandila Shipping, Inc.,* 113 F.3d 1050, 1054 (9th Cir.1997), *cert. denied,* 522 U.S. 1107, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998). Viewing the evidence in the light most favorable to the nonmovant, we consider whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Margolis,* 140 F.3d at 852.

## DISCUSSION

### I. EXISTENCE OF CONTRACT

Prior to the theft of the golf balls, Dunlop contracted with NNR on 47 separate occasions for the importation of its goods. For each transaction, NNR sent Dunlop an invoice identical in its terms and conditions. INA argues, however, that it should not be held to the liability limit of $50 contained in the invoice as the limitation term was not a part of Dunlop's oral agreement with NNR. In so doing, INA asks us to disregard the invoices sent by NNR to Dunlop.

Liability is a term inherent to shipping contracts. *See In re CFLC, Inc.,* 166 F.3d 1012, 1018 (9th Cir.1999). We have thus tacitly approved the use of a course of dealing analysis in interpreting such contracts where the agreement is silent with respect to liability. *See id.* Today we rule that invoice terms and conditions may supplement shipping agreements if there has been a sufficient course of dealing and thereby, find that INA is subject to the terms and conditions of the invoice for the stolen golf balls. In enforcing the $50 liability limit, we are in consonance with our sister circuits. *See e.g. Capitol Converting Equip. Inc. v. LEP Trans., Inc.,* 965 F.2d 391, 395–96 (7th Cir.1992) (upholding a liability limit contained in an invoice); *Calvin Klein Ltd. v. Trylon Trucking Corp.,* 892 F.2d 191, 195–96 (2d Cir.1989) (enforcing the liability terms of an invoice); *Transamerica Oil Corp. v. Lynes, Inc.,* 723 F.2d 758, 764–65 (10th Cir.1983) (ruling that invoice provisions are relevant in defining a contract); *Alcoa Steamship Co. v. Charles Ferran & Co.,* 383 F.2d 46, 54–55 (5th Cir.1967), *cert. denied,* 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968) (upholding a limitation of liability clause in an invoice delivered upon completion of the contract).

A course of dealing is "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Cal. Com.Code § 1205(1) (1964). An inference of the parties' common understanding that is based upon a prior course of dealing is a question of fact. *See In re CFLC, Inc.,* 166 F.3d at 1017. Although INA contends that the invoice did not modify the terms of the oral contract, we do not conflate a course of dealing inquiry with a material alterations analysis where, as here, a transaction in goods is not at issue. *See* UCC § 2–102 (West 1999).

**1114**

■ The germane inquiry is whether Dunlop's receipt of 47 identical invoices for 47 separate transactions is sufficient to constitute a course of dealing. We find our analysis with respect to bills of lading most instructive because, like invoices, they can serve the dual purpose of billing customers and stipulating terms and conditions. In ascertaining the volume of transactions necessary to presume a familiarity with the terms contained in a bill of lading, we have found a course of dealing based on the receipt of three to four bills of lading with identical limitation of liability terms. *See Royal Ins. Co. v. Sea–Land Serv. Inc.,* 50 F.3d 723, 727 (9th Cir.1995). Consistent with this reasoning, we find that 47 identical invoices sent by NNR over a period of three years put Dunlop on notice of the terms and conditions contained in them.

INA contends that actual knowledge of the $50 liability limit should be a determinative factor in whether we enforce the invoice term. In doing so, INA mistakenly relies on a district court case, *Independent Mach. v. Kuehne & Nagel, Inc.,* 867 F.Supp. 752 (N.D.Ill.1994). The court, in enforcing a liability limit based on as few as five prior dealings, notes that Independent Machinery was aware of the invoice terms. *See id.* at 765. In its analysis, however, the court also emphasizes that the course of dealing should have put Independent Machinery on notice of the terms irrespective of whether it had actual knowledge:

> [Independent Machinery] would be hard-pressed to [profess ignorance] with any credibility: Each invoice has a legend in capital letters and red print referring the reader to the terms and conditions on the reverse side, and each of the relevant clauses appears on the reverse side in a readily readable (though very small) typeface and is preceded by its title . . . in bold (though again small) print . . .

*Id.* The invoices sent by NNR to Dunlop likewise state, "NNR handles shipments subject to the terms and conditions set forth on the reverse side of this invoice"

and the reverse side is entitled in bold letters, "TERMS AND CONDITIONS OF SERVICE (Please Read Carefully)." Each of the clauses on the reverse side is, moreover, explained in clear language and is preceded by a readily identifiable title. We therefore presume INA's knowledge of the terms based on the prior dealings.

## II. DEFINITION OF "SHIPMENT"

■ INA contends that there was uncertainty with respect to the meaning of the invoice phrase, "$50 per shipment," as the term "shipment" could have meant any one of three alternative definitions: (1) each of the 2,703 cartons of golf balls, (2) each of the 53,632 pounds of cargo, or (3) the entirety of the cargo referenced on the invoice. Because any uncertainty in a writing is construed most strongly against the party who caused the uncertainty to exist, *see InterPetrol Bermuda Ltd. v. Kaiser Aluminum Int'l Corp.,* 719 F.2d 992, 998 (9th Cir.1984), INA asserts that we should read the limitation term, "shipment," to mean each of the 53,632 pounds of cargo.

INA is correct with respect to contract interpretation, but its legal argument lacks factual substantiation. Jean Ashworth, transportation administrator for Dunlop, used the term "shipment" in a manner evincing a mutual understanding of the term: "[t]he shipment was one of two containers of golf balls, totaling 2,703 cartons of golf balls." INA does not provide any evidence suggesting that Dunlop construed "shipment" to mean otherwise.

## III. IMPOSSIBILITY OF COMPLIANCE

■ Under the terms of the invoice, Dunlop had the option of increasing NNR's liability by written agreement prior to the shipment. INA argues, however, that Dunlop did not have the opportunity to declare a higher value as it did not receive the invoice until two weeks after the theft. A contract condition which is impossible to fulfill is void. *See* Cal. Civ. Code § 1441 (1982).

Although sympathetic to INA's predicament, we do not believe that actual possession of the invoice is necessary to enforce a liability term where, as here, there has been a course of dealing. We find that Dunlop's receipt of identical invoices on 47 occasions prior to the theft of the golf balls is sufficient to presume its knowledge of the terms and conditions. This analysis is consistent with our holdings in bill of lading cases. *See Royal Ins. Co.*, 50 F.3d at 727 (ruling that actual possession of the bill of lading is not required to enforce a limitation term).

We are not alone in relying on a course of dealing analysis to enforce invoice terms despite the absence of actual notice. In *Calvin Klein Ltd.*, the Second Circuit considered a case where Calvin Klein was invoiced for a shipment subsequent to it being stolen from the goods carrier. *See* 892 F.2d at 192. Because Calvin Klein had contracted with the carrier to transport hundreds of prior shipments over a period of at least three years, the court determined that Calvin Klein had ample opportunity to declare a higher value and enforced the liability limitation. *See* 892 F.2d at 196 (reasoning that because the parties were not dealing with each other for the first time nor contracting under new or changed terms, Calvin Klein was aware of the terms and free to adjust the limitation). The *Independent Machinery* court likewise upheld a liability term although the client was invoiced only after the mishandling of the goods in question. *See* 867 F.Supp. at 765. The court reasoned that the terms included in each of the prior dealings were built into the parties' shipping agreement. *See id.* Using a similar analysis, we reject INA's contention that compliance with the invoice terms was impossible.

## IV. STATUTORY RESTRICTIONS

### A. California Commercial Code § 7204(1)

■ California Commercial Code § 7204(1) stipulates that a warehouseman is liable for damages to goods caused by the failure to exercise reasonable care. *See* Cal. Com.Code § 7204(1) (1990). A warehouseman is "a person engaged in the business of storing goods for hire." *See* U.C.C. § 7–102(1)(h) (West 1999).

INA argues that NNR is subject to the purview of § 7204(1) as it is a warehouseman. INA supports this claim by offering as evidence a memo from T. Hayashi of Sumitomo Rubber Industries to Jean Ashworth which contains a cryptic note: "Noted the notify party on B/L should be NNR and NNR is not only forwarder but also broker & warehouse." We have no way of telling, however, who T. Hayashi is, how Sumitomo is involved with the transaction, and who identified NNR as a warehouse. The depositions of NNR staff and memos from NNR to Dunlop indicate only that Dunlop was paying for the forwarding of cargo from Japan to Long Beach, customs clearing, drayaging, and palletizing. Other than pointing out that NNR was holding the container of golf balls while preparing it to be picked up for delivery to South Carolina, INA fails to raise any facts of material relevance that NNR was storing the goods for profit.

### B. Carmack Amendment

■ The Carmack Amendment subjects common carriers and freight forwarders transporting cargo in interstate commerce to absolute liability for actual loss or injury to property. *See* 49 U.S.C.A. § 14706(a) (West Supp.1999). We have no basis for applying the Carmack Amendment here, however, as Dunlop did not hire NNR to transport the golf balls in interstate commerce. NNR was responsible only for importing the golf balls by ocean carriage, transporting the cargo from the Port of Long Beach to NNR's warehouse, palletizing, and loading the golf balls onto a truck chosen by Dunlop. There is no evidence to indicate that NNR was to have any role in transporting the cargo from California to its intended final destination, South Carolina.

## V. ADEQUACY OF THE SUMMARY JUDGMENT ORDER

The district court, in granting summary judgment to NNR, issued an order brief in its length:

The Court has considered Plaintiff's motion for summary judgment and Defendant's motion for partial summary judgment, together with the moving papers.

It is Ordered that Plaintiff's motion be, and hereby is, Denied.

It is Ordered that Defendant's motion be, and hereby is, Granted.

It is Ordered, Adjudged and Decreed that judgment be, and hereby is, Entered in favor of Defendant and against Plaintiff as to limitation of liability.

It is further Ordered, Adjudged and Decreed that Defendant's liability is limited to $50.00.

INA contends that the order's brevity makes it inadequate for appellate review and asks us to remand this case for a statement of the district court's analysis. The federal rules do not, however, require a statement of reasons by a trial judge for granting summary judgment. *See* Fed. R.Civ.P. 56. Rule 52(a), in fact, specifically states that "[f]indings of fact and conclusions of law are unnecessary" when deciding Rule 56 motions. Fed.R.Civ.P. 52(a).

AFFIRMED.