### In re STORM TECHNOLOGY, INC., Debtor.

### No. 98–58595–MM.

United States Bankruptcy Court, N.D. California.

March 27, 2001.

Michael A. Isaacs, Luce Forward, Hamilton & Scrips, San Francisco, CA, for Jerome E. Robertson, trustee.

Philip S. Warden, Pillsbury Wintrop, LLP, San Francisco, CA, for Logitech, Inc.

## OPINION

MARILYN MORGAN, Bankruptcy Judge.

### INTRODUCTION

The issue before the Court is whether Logitech, Inc. may successfully invoke § 365(n) of the Bankruptcy Code to enforce a license in scanner technology. Although Logitech contracted prepetition for the right to the license upon default on the debtor's payment obligation, Logitech's rights under the agreement were frozen when Storm Technology, Inc. filed its bankruptcy petition. Since the condition precedent to the inception of the license had not occurred prior to the petition date, Logitech does not have a license in the patents.

### FACTUAL BACKGROUND

The facts appear to be largely undisputed, although their characterization and legal effect are vigorously contested. On December 18, 1997, Storm Technology and Logitech contracted for the sale and assignment to Storm Technology of patents in scanner technology. The purchase price was $9 million, consisting of $5 million in cash and a $4 million note. The maturity date for the note was March 27, 1998; however, if Storm Technology failed to pay the note by March 27, 1998, the first maturity date was extended to March 26, 1999. As a penalty for missing the first maturity date, interest would begin to accrue. The agreement provided that upon failure to pay the $4 million note in full by the second maturity date, "Logitech will have a worldwide, non-exclusive royalty-free, fully paid-up license...."

Margaret Wynne, the Vice President, Legal and General Counsel of Logitech and a member of Logitech's negotiating team, testified by declaration that the sale was an integrated transaction that transferred Logitech's entire scanner business line to Storm Technology. Her declaration states that Logitech did not intend to retain a security interest in the patented scanner technology. Instead, in the event of a payment default, Logitech negotiated to license the technology.

Ownership of the patents transferred to Storm Technology at closing on December 18, 1997. Thereafter, Logitech recorded a Patent Assignment with the United States Patent and Trademark Office on March 17, 1998. Storm Technology failed to make the $4 million note payment on the first maturity date. It filed a chapter 11 petition on October 21, 1998, but converted the case to Chapter 7 on November 25, 1998. The Chapter 7 Trustee served notice of his intent to sell all the estate's patents free and clear of liens and interests for the sum of $300,000, subject to overbids. Neither the debtor nor the Chapter 7 Trustee made the note payment to Logitech on the second maturity date. Logitech then filed

a limited objection to the sale asserting a license in certain of the patents based on the default on the second maturity date. Nonetheless, the Trustee auctioned the patents, accepting the high bid of $1,405,000 by Maxi Switch, Inc. The buyer transferred a portion of the purchase price to the Trustee upon Court approval of the sale of the undisputed assets. Later, Maxi Switch agreed to pay the full purchase price, whether or not Logitech received a license for the patents, and transferred the balance of the sales price to the estate upon the Trustee's agreement to litigate Logitech's claim of a license to resolution.

At a hearing on the Trustee's sale motion, the Court approved the sale of the estate's interest in the patents free and clear of liens and interests pursuant to § 363(f), but reserved jurisdiction to determine the dispute over Logitech's claimed license and afforded the parties the opportunity to submit additional briefs.

### CONTENTIONS OF THE PARTIES

By the express terms of the prepetition sale agreement, Logitech claims a license in the patents that arose when Storm Technology defaulted on the second maturity date. First, Logitech contends that the Bankruptcy Court does not have jurisdiction to hear the matter since Maxi Switch has paid the full purchase price, and the bankruptcy estate is not affected by the outcome of the dispute between non-debtors Logitech and Maxi Switch. Second, it argues that its sale agreement with Storm Technology is an executory contract subject to numerous unperformed material obligations and governed by the provisions of § 365. Specifically, pursuant to § 365(n) of the Bankruptcy Code, Logitech asserts that it may elect to retain its license rights under its agreement. Final-

ly, Logitech notes that it never claimed a security interest but rather a license.

The Trustee responds that Logitech does not hold a license in the patented technology but an unsecured claim against the bankruptcy estate because the license is merely a remedy in lieu of damages. The Trustee disputes that the sale agreement is executory and contends that Logitech's claimed license is avoidable under § 544(b) as an unperfected security interest.

### LEGAL DISCUSSION

#### A. The Court Has Jurisdiction to Hear the Matter.

##### 1. This is a Core Proceeding.

 The Court has jurisdiction to hear all core proceedings "arising under title 11 or arising in a case under title 11." 28 U.S.C. § 157(b). To determine whether a proceeding is core, the Court looks to both the form and the substance of the proceeding. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987). If the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside bankruptcy, it is not a core proceeding. *Id.* The factors the Court considers include whether the rights involved exist independent of Title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case. *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1450 n. 5 (9th Cir.1990).

 Logitech invokes and elects to exercise rights under 11 U.S.C. § 365(n), which are created under federal bankruptcy law. These rights would not exist independent of the bankruptcy case. Moreover, the question raised by Logitech is the extent of its claimed interest in the

estate's technology, which the Trustee has now sold to a third party. As a result, this dispute comes within the purview of the Court's core jurisdiction under 28 U.S.C. § 157(b)(2)(K), determinations of the validity, extent, or priority of liens. In the alternative, resolution of the dispute effectively constitutes a determination of the scope of the assets of the estate under § 541(a), which is a core matter.

### 2. The Proceeding Also Comes Within the Court's "Related to" Jurisdiction.

■■■ Additionally, this dispute comes within the Court's "related to" jurisdiction. The Supreme Court has recognized that the jurisdictional grant to bankruptcy courts under 28 U.S.C. § 157(a) and § 1334(b) is broad. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). A broad grant of jurisdiction promotes the efficient and expeditious resolution of all matters connected with the bankruptcy estate. *Id.*

■■■ A proceeding is related to bankruptcy if the outcome could conceivably have any effect on the estate being administered in bankruptcy. *Id.* at 308 n. 6, 115 S.Ct. 1493. *See also American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*, 885 F.2d 621, 623 (9th Cir.1989); *Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306–07 (9th Cir.1989); *Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988). The proceeding need not necessarily be against the debtor or the debtor's property; it is related if the outcome could alter the debtor's rights, liabilities, options, freedom of action (either positively or negatively), or the handling and administration of the estate. *Celotex*, 514 U.S. at 308 n. 6, 115 S.Ct. 1493.

■■■ In this case, the Trustee and the buyer agreed that the Trustee would op-pose Logitech's claim of a license. The Trustee undertook that obligation as a condition to the buyer's release of funds to the estate. The Trustee's agreement to undertake resolution of the Logitech dispute affects the estate's right to retain the balance of the sales proceeds and conceivably could affect the costs of administration of the estate, bringing this dispute within the purview of this Court's "related to" jurisdiction.

### B. Logitech Held Only a Contingent Interest in the Estate's Intellectual Property as of the Petition Date.

The second issue is whether Logitech may elect to retain its claimed license rights under § 365(n). Section 365(n) provides in pertinent part:

(n)(1) If the trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect . . .

(B) to retain its rights . . . under such contract . . . to such intellectual property . . . as such rights existed immediately before the case commenced . . . .

As of the petition date, Logitech's claimed license was not in effect. Logitech concedes that, if the prepetition agreement were executory, it was deemed rejected under § 365(d)(1) sixty days after entry of the order for relief. Rejection of the executory contract occurred before the asserted license would have arisen upon default on the second maturity date. Under § 365(g), the rejection is treated as a contract breach occurring immediately before the filing of the petition. Applying § 365(g), Logitech would be entitled only to a prepetition unsecured claim for damages under § 502(g). Because characterization of the agreement as executory is not dispositive, the Court need not reach the issue.

Nevertheless, Logitech asserts that upon deemed rejection, § 365(n)(1)(B) would afford it the opportunity to elect to retain its rights to the intellectual property under its agreement. It relies on the legislative history to § 365(n), which provides that "the amendment, when referring to retention of rights under 'such contract,' deliberately omits the phrase 'the term of which has commenced' appearing in [a] somewhat parallel subsection ...." S. REP. No. 100–505, at 8 (1988), U.S.Code & Admin.News 1988, at 3200, 3206. Because of this language, Logitech argues that the Court should construe the legislative history to include within the scope of § 365(n) a license the term of which has not yet commenced.

■ However, the express words of the statute provide that a licensee may elect to retain its rights under the license as those "rights existed immediately before the case commenced." Rules of statutory construction require that a court effectuate the plain meaning of a statute where it can be determined without resort to the legislative history. *See Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); *Patterson v. Shumate,* 504 U.S. 753, 761, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The unambiguous language of § 365(n) limits the scope of the rights retained to those that existed immediately before the petition date.

■ Upon the filing of a bankruptcy petition, the rights of parties become fixed, subject to the rights and remedies incorporated in the Bankruptcy Code. *Leppaluoto v. Combs (In re Combs),* 101 B.R. 609, 614–15 (9th Cir. BAP 1989). Whatever rights the estate has in property at the commencement of a case continue in bankruptcy—no more and no less. *See Gendreau v. Gendreau (In re Gendreau),*

122 F.3d 815, 818 (9th Cir.1997), *cert. denied,* 523 U.S. 1005, 118 S.Ct. 1187, 140 L.Ed.2d 318 (1998). Where a party has a remedy that is simply an alternative to a right to payment, that party merely has a claim in the bankruptcy case. *Ohio v. Kovacs,* 469 U.S. 274, 279–83, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985); 11 U.S.C. § 101(5)(B).

■ As of the petition date, Logitech had no rights in the debtor's intellectual property but merely a contingent right to a license upon a default on the debtor's payment obligation. This right of recapture contained in ¶ 2.2(d) of the sale agreement between Storm Technology and Logitech is not uncommon. *See* 2 *Milgrim on Licensing* §§ 15.00, 15.03, 15.04. A contractual right of recapture typically takes the form of a perfected security interest or a reconveyance of the assigned property upon default, notice of default, and failure to cure. In this instance, however, the right of recapture assumed the form of a license in the assigned patents. Milgrim explains that the better practice where payment in full is not made at closing is to reserve and perfect a security interest. *Id.* at § 15.03. Logitech had no enforceable license in the patents as of the petition date. It concedes it had no enforceable security interest. *In re CFLC, Inc.,* 166 F.3d 1012, 1016 (9th Cir.1999). Since the sale agreement, if executory, would have been deemed rejected before its claimed license arose, Logitech cannot now assert a license in the patents.

### CONCLUSION

For the foregoing reasons, the Court concludes that Logitech does not have an enforceable license in the patents sold by the estate.