**FALVEY CARGO UNDERWRITING, LTD.,** a corporation, acting on its own behalf and for and on behalf of certain underwriters at Lloyd's subscribing to policy number M2022/WC2022 MA 3005 and Activision, Inc., a corporation, Plaintiffs,

v.

**MAINFREIGHT, INC.,** a corporation, Defendant.

Case No. CV 09–07909 DDP (VBKx).

United States District Court,
C.D. California.

Dec. 16, 2010.

Joshua A. Southwick, G. Geoffrey Robb, Joshua E. Kirsch, Gibson Robb & Lindh LLP, San Francisco, CA, George Pascal Hassapis, Roberts & Kehagiaras LLP, Long Beach, CA, for Plaintiffs.

George Pascal Hassapis, Cameron W. Roberts, Roberts & Kehagiaras, Los Angeles, CA, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

[Cross Motions filed on 10/29/10]

DEAN D. PREGERSON, District Judge.

Presently before the court are the parties' cross-motions for summary judgment. After reviewing the parties' moving papers, the court is inclined to grant Plaintiff's Motion for Summary Judgment.

## I. Background

Activision, Inc. ("Activision") owned a shipment of video games supplied by JVC Disc Americ ("JVC"). Falvey Cargo Underwriting, Ltd. ("Falvey") insured Activision's cargo. Mainfreight, Inc. ("Mainfreight") agreed to transport the shipment from Georgia to Missouri. Mainfreight executed two bills of lading when it picked up the video games. The bills of lading made no reference to a limitation of Mainfreight's liability. At some point between Georgia and Missouri, the shipment of video games, valued at approximately $256,000, was stolen while in Mainfreight's care. Falvey indemnified Activision for the loss and sought reimbursement from Mainfreight. Both parties now move for summary judgment.

## II. Legal Standard

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1278 (9th Cir.1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

## III. Discussion

The Carmack Amendment to the Interstate Commerce Act of 1887 generally limits a carrier's liability under an interstate bill of lading to "the actual loss or injury to the property caused by" the carrier. 49 U.S.C. § 14706(a). However, a carrier may establish rates "under which the lia-

bility of the carrier ... is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A).

■ To successfully limit its liability under the Carmack Amendment, a carrier must (1) give the shipper a reasonable opportunity to choose between levels of liability, (2) obtain an agreement as to the shipper's choice of carrier liability, and (3) issue a bill of lading prior to shipment. *See, e.g. Hughes Aircraft Co. v. North Am. Van Lines,* 970 F.2d 609, 611–12 (9th Cir. 1992); *see also Atlantic Mut. Ins. Co. v. Yasutomi Warehousing and Distribution, Inc.,* 326 F.Supp.2d 1123, 1126–27 (C.D.Cal.2004).

■ The agreement as to the shipper's choice of carrier liability must be in writing. *Hughes Aircraft,* 970 F.2d at 612 n. 3.

Mainfreight does not cite, nor is this court aware of, any Ninth Circuit case exempting carriers from the *Hughes Aircraft* requirement of a written agreement limiting a carrier's liability under the Carmack Amendment. *Insurance Company of North America v. NNR Aircargo Service (USA), Inc.,* 201 F.3d 1111 (9th Cir. 2000), does not support Mainfreight's contention that a course of dealing is sufficient to limit a carrier's liability. While the *NNR* court did rely upon a course of dealing to enforce invoice terms, the court explicitly stated that there was no basis for applying the Carmack Amendment. *NNR,* 201 F.3d at 1115. *NNR,* therefore, cannot be read to create an exception to the *Hughes Aircraft* rule.

Mainfreight's reliance on *Yasutomi* is also misplaced. The *Yasutomi* court cited several non-Carmack Amendment cases, including *NNR,* to find a course of dealing

sufficient to limit a carrier's liability. *Yasutomi,* 326 F.Supp.2d 1123, 1127–1128; *c.f. Shielding Intern., Inc. v. Oak Harbor Freight Lines, Inc.,* 442 F.Supp.2d 1092, 1096 (D.Or.2006) (Refusing to extend non-Carmack course of dealing cases to Carmack Amendment case). Even *Yasutomi,* however, did not go so far as to suggest that a written limitation of liability was wholly unnecessary, even in the context of a course of dealing. *Yasutomi,* 326 F.Supp.2d at 1127 ("As long as there is a course of dealing, courts have only required that the bill of lading clearly state the monetary limitation and the method of avoiding it" (internal citation and alteration omitted)). Furthermore, the facts in *Yasutomi* are readily distinguishable from those here. In *Yasutomi,* the carrier provided evidence of 101 written limitations of liability over a three year period. *Id.* at 1125. Furthermore, though the shipper in *Yasutomi* could not produce one misplaced bill of lading limiting the shipper's liability, the shipper was, in the particular five-container shipment at issue, able to produce four identical written limitations. *Yasutomi,* 326 F.Supp.2d at 1125.

■ Here, Mainfreight invokes an eight-year course of dealing between itself Activision, JVC (Activision's supplier) and predecessors in interest, but fails to produce even a single written limitation of liability sufficient to meet the *Hughes Aircraft* test. Mainfreight makes several references to various ill-defined agreements between Mainfreight's predecessor in interest, Target Logistics, and JVC, Activision's supplier. Mainfreight attempts to establish a course of dealing and/or a written limitation of liability by such references. Absent a written agreement limiting Mainfreight's liability for the stolen Activision shipment, however, or even any similar agreement regarding any prior shipment, there is no triable issue of mate-

1198

rial fact. Mainfreight cannot show that it satisfied the *Hughes Aircraft* factors, and therefore cannot demonstrate that it successfully limited its liability under the Carmack Amendment.

## IV. Conclusion

For the reasons set forth above, the court GRANTS Falvey's Motion for Summary Judgment and DENIES Mainfreight's Motion for Summary Judgment.

IT IS SO ORDERED.