NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-12-1624-JuKiPa |
| SK FOODS, L.P., | Bk. No. EC-09-29162-RSB |
| Debtor. | Adv. No. EC-11-02337-RSB |
| SK PM CORP., INC.; SCOTT SALYER REVOCABLE TRUST; SSC&L 2007 TRUST; MONTEREY PENINSULA FARMS, LLC; FREDERICK SCOTT SALYER, aka Scott Salyer, in his capacity as Trustee for the Scott Salyer Revocable Trust; ROBERT PRUETT, in his capacity as Trustee for the SSC&L 2007 Trust; FAST FALCON, LLC, | |
| Appellants, | |
| v. | M E M O R A N D U M* |
| BRADLEY D. SHARP, Chapter 11 Trustee, | |
| Appellee. | |

Argued and Submitted on October 18, 2013
at Sacramento, California

Filed - December 10, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding

_____

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appearances: Kimberly Anne Wright, Esq. argued for appellants; Kevin W. Coleman, Esq., of Schnader Harrison Segal & Lewis LLP argued for appellee Bradley D. Sharp.
_____

Before: JURY, KIRSCHER, and PAPPAS, Bankruptcy Judges.

Appellants, SK PM Corp., Inc. (SKPM), Scott Salyer Revocable Trust (SSRT), the SSC&L 2007 Trust, Monterey Peninsula Farms, LLC (MPF), Frederick Scott Salyer (Salyer) in his capacity as Trustee for the SSRT, Robert Pruett in his capacity as Trustee for the SSC&L 2007 Trust, and Fast Falcon, LLC (Fast Falcon) (collectively, Defendants), appeal from the bankruptcy court's November 29, 2012 Partial Judgment in favor of appellee, Bradley D. Sharp, chapter 11[1] trustee (Trustee) for debtor SK Foods, L.P. (SK Foods).

In the Partial Judgment, the bankruptcy court decided on Trustee's motion for summary judgment (MSJ) that (1) SK Foods, rather than SKPM and SSRT, owned the stock (SKFA Stock) of an entity affiliated with SK Foods known as SK Foods Australia Pty. Ltd. (SKFA) and (2) SK Foods, rather than the SSC&L 2007 Trust, had the exclusive right to payment on an intercompany loan (Intercompany Loan) made by SK Foods to SKFA (collectively, the SKFA Stock and Intercompany Loan are referred to as the Assets). Therefore, the bankruptcy court concluded that the Assets were property of SK Foods' estate. Having reviewed the voluminous record, we AFFIRM.

_____

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 and "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

## I. FACTS AND PROCEDURAL HISTORY

SK Foods, SKFA, and defendants SKPM, SSRT, the SSC&L 2007 Trust, MPF and Fast Falcon were part of Salyer's expansive global network of related entities which included individual and revocable trusts, partnerships, limited liability companies, C Corporations, S Corporations and Trusts.

SK Foods, a California limited partnership, was one of the largest producers of tomato products in the nation. SKPM, a California corporation, was SK Foods' general partner owning 55%. SSRT, a California trust, of which Sayler was the beneficiary, was SK Foods' limited partner owning 45%. SSRT held 100% of SKPM's shares. Salyer's related entities in Australia and New Zealand, including SKFA,[2] were also part of the tomato and vegetable processing industry and had corporate relationships among each other and SKPM and SSRT.

Sayler formed the SSC&L 2007 Trust, a California trust of which Salyer is also a beneficiary, to effectuate a transfer of the Intercompany Loan from SK Foods to the trust. Sayler also formed MPF, a California limited liability company, and Fast Falcon, which was organized under the laws of Nevis, West Indies, allegedly to shield assets such as the SKFA Stock and Intercompany Loan from his creditors.

Ultimately, Sayler's empire collapsed. In 2005, SK Foods and Sayler became the subject of a criminal investigation by the United States Department of Justice. This investigation

---

[2] The Australian related entities were Cedenco JV Australia and SS Farms Australia.

-3-

resulted in a criminal prosecution against Sayler for price-fixing and other criminal acts. Sayler was convicted and sentenced to prison.

In addition, SK Foods defaulted on its loans from its largest secured lender, the Bank of Montreal (BMO). Although BMO and SK Foods attempted a work out, refinancing was not an option. SK Foods investigated a possible sale and considered bankruptcy, but in BMO's view, did neither in a timely manner.

On May 5, 2009, BMO filed involuntary chapter 11 petitions against SK Foods and RHM Industrial/Specialty Foods, Inc. d/b/a Collusa County Canning Co. (RHM). On May 7, 2009, SK Foods and RHM filed voluntary chapter 11 petitions and the cases were consolidated. On May 14, 2009, Sharp was appointed Trustee.

Not long after SK Foods' bankruptcy filing, in the Fall of 2009, ANZ Bank placed SKFA and its affiliates in Australia and New Zealand into receivership. ANZ Bank's receiver subsequently sold SKFA's assets and, after paying the secured debt owed to ANZ Bank, held a residue of more than $60 million for distribution to SKFA's remaining creditors and interest holders.

In May 2010, SKFA and its affiliates elected to proceed with a voluntary liquidation and selected Sheahan Lock Partners in Adelaide, Australia to serve as their liquidators (Liquidators).[3] On August 11, 2010, Mr. Sheahan and Mr. Lock

---

[3] On February 7, 2011, Liquidators obtained recognition of the Australian liquidation under Chapter 15 of the Bankruptcy Code in the Northern District of California Bankruptcy Court. They then obtained orders permitting them to issue subpoenas for production of documents and depositions of witnesses in relation
(continued...)

-4-

were appointed as Liquidators for SKFA and its affiliates.

With funds obtained from the receiver, Liquidators had enough money to pay all of SKFA's creditors in full, including the owner of the Intercompany Loan, and to pay on account of SKFA Stock in excess of $32 million. Under the Australian Corporations Act 2002 (Cth) (Corporations Act) s 501, any surplus in SKFA must be distributed to the members (shareholders) of the company in proportion to the shares held by them, subject to modification under SKFA's constitution, which was its governing document.

Trustee submitted proofs of debt (POD) to Liquidators for payment on account of the Assets. The SSC&L 2007 Trust and Fast Falcon also submitted POD to Liquidators for the same. Trustee maintained that SK Foods owned the Assets on the Petition Date because (1) SK Foods was listed on SKFA's company register as the owner of the stock on the Petition Date and (2) there were no documents evidencing a transfer of the Intercompany Loan from SK Foods to the SSC&L 2007 Trust prior to the Petition Date. Defendants contended that, in contrast to SKFA's company register, SKPM and SSRT held the beneficial interest in the SKFA Stock because various documents showed that SK Foods agreed to transfer the stock to them. They further argued that the SSC&L 2007 Trust held the beneficial interest in the Intercompany Loan

[3](...continued) to the ownership issues raised in this appeal. BMO sought to have the case dismissed. On April 13, 2012, the bankruptcy court in the Northern District of California heard and denied BMO's motion to dismiss and subsequently transferred the chapter 15 case to the Eastern District of California.

as evidenced by accounting entries and other documents which, they argued, amounted to an equitable assignment.

In May 2011, Trustee commenced the instant adversary proceeding against Defendants seeking to recover the SKFA Stock and Intercompany Loan, which were allegedly transferred to or by various entities owned and controlled by Salyer, under §§ 544, 548 and 550 and Cal. Civ. Code §§ 3439.04, 3439.05 and 3439.07. Trustee also asserted a willful violation of the automatic stay occurred through postpetition attempts to effectuate the transfers.

In December 2011, Liquidators admitted Trustee's POD for the Intercompany Loan in part and rejected the SSC&L 2007 Trust's and Fast Falcon's POD. Liquidators found that Trustee's POD was subject to set-off and calculated the claim at $10,005,528. From this amount, they proposed to withhold $867,022 to be remitted to the Australian Taxation Office, leaving a net amount of $9,138,506 to SK Foods. Trustee commenced a proceeding in the Federal Court of Australia disputing Liquidators' decision in relation to the set off amounts.

On December 15, 2011, the SSC&L 2007 Trust and Fast Falcon commenced a proceeding in the Federal Court of Australia appealing Liquidators' decision to admit Trustee's POD for the Intercompany Loan. The Federal Court of Australia subsequently dismissed that appeal.

In February 2012, Trustee commenced a proceeding in the Federal Court of Australian seeking declaratory relief as to the legal and beneficial ownership of the SKFA Stock.

In May 2012, Liquidators concluded that Australian law applied to the determination of the ownership of SKFA Stock and under Australian law, SKPM and SSRT obtained an equitable/beneficial interest in the SKFA Stock in late January 2007 or early 2008. They also determined that an equitable assignment of the Intercompany Loan occurred around the same time as evidenced by book entries and various emails and correspondence between SKFA and SK Foods' advisors and executives. Defendants rely upon Liquidators' decision to support their arguments in this appeal.

In June 2012, Liquidators revoked their decision to admit Trustee's POD for the Intercompany Loan.

On July 3, 2012, Trustee filed a first amended complaint in this adversary proceeding asserting eight claims for relief: (1) Declaratory Relief - Determination of Property of the Estate (Intercompany Loan) - As to All Defendants; (2) Declaratory Relief - Determination of Property of the Estate (SKFA Stock) - As to All Defendants; (3) Willful Violation of the Automatic Stay - As to SSRT, SKPM, SSC&L 2007 Trust, MPF, and Fast Falcon; (4) Avoidance and Recovery of Unauthorized Post-Petition Transfer - As to SSRT, SKPM, MPF, and Fast Falcon; (5) Declaratory Relief - Determination that Trustee Holds Superior Title to the Intercompany Loan - As to SSC&L 2007 Trust and Fast Falcon; (6) Declaratory Relief - Determination that Trustee Holds Superior Title to the SKFA Stock - As to SSRT, SKPM, MPF and Fast Falcon; and (7) Avoidance and Recovery of Fraudulent Transfers - SKFA Stock - As to SKPM, SSRT, MPF, and Fast Falcon; and (8) Breach of Fiduciary Duty/Conversion -

-7-

Imposition of Equitable Lien/Constructive Trust - As to SKPM.

Trustee also sought a permanent injunction to restrain Defendants from further interfering with his control over property of the estate and requested the bankruptcy court to appoint a post-judgment receiver to take possession of the fraudulently transferred property.

**A. Trustee's Motion for Summary Judgment**

On August 8, 2012, Trustee filed his MSJ contending there was no genuine dispute as to any material fact with respect to his claims. The material facts[4] which formed the basis of Trustee's MSJ are as follows:

In January 2002, SK Foods purchased 100 shares of SKFA from an entity known as Cerebos, a New Zealand Sayler-related entity. On January 11, 2002, SK Foods executed a consent to become a member (shareholder) of SKFA.

On February 25, 2002, SK Foods loaned $6.25 million to SKFA. SKFA entered this transaction on its books as a loan from SK Foods.

The Consolidated Balance Sheets for Year Ended October 31, 2006, showed the receivable due in the amount of $13,713,000. The October 31, 2006 Notes to the Consolidated Financial Statements showed that SK Foods was the 100% shareholder of SKFA.

[4] We do not recite all the facts contained in this record pertaining to the transfers of the Assets from SK Foods to SKPM, SSRT and SSC&L 2007 Trust. Instead, we have identified those facts which we consider material for purposes of this appeal. To the extent more is needed, the parties are familiar with the background facts and the bankruptcy court's tentative ruling contains a comprehensive rendition of the facts.

-8-

In 2007, an accounting problem with the Assets surfaced during the preparation of SK Foods audited financial statements. Moss Adams LLP (Moss Adams), which had been retained to prepare audited financial statements for SK Foods, informed SK Foods that, because of its ownership of the Assets, U.S. accounting rules required SKFA's financial statements to be consolidated with SK Foods' statements.[5] Consolidation of the Australian and New Zealand affiliates' assets, liabilities and operations into those of SK Foods created a burdensome accounting task because SKFA's year-end differed from SK Foods and SKFA's financial statements were audited under Australian accounting standards which required a conversion to U.S. accounting standards prior to consolidation. Salyer sought to avoid the time and cost involved with complying with the accounting rules and instructed his financial and legal advisors to devise a strategy for doing so.

In November 2007, it was decided that SK Foods would distribute the SKFA Stock to its partners, SSRT and SKPM (the Spin Off). It was also decided that the Intercompany Loan would be assigned to the SSC&L 2007 Trust, a trust under which Salyer was the trustee and beneficiary, in exchange for a promissory note of like amount. Finally, SK foods would backdate the

---

[5] This accounting problem is what has been described in the record as the "FIN 46" issue. Under FIN 46, a company must report the assets, liabilities, and financial performance of any entity in which the reporting company holds an ownership, contractual, or other pecuniary interest the value of which is subject to change based upon changes in the fair value of the other entity's assets (referred to as a "variable interest entity").

-9-

purported transfers to November 1, 2006 (the first day of its fiscal year) to avoid the need to consolidate.

In January 2008, Salyer and others signed a management representation letter (Management Representation Letter) to Moss Adams stating:

> We have distributed our investments in foreign subsidiaries (Cedenco entities) to the partners and sold the net related intercompany receivables to a revocable trust with common ownership with the Company effective November 1, 2006.  We determined that the Company does not have a variable interest in the Cedenco entities.

On January 15, 2008, Moss Adams issued its opinion in connection with the June 30, 2007 audit of SK Foods.  The notes to the June 30, 2007 financial statements state:

> The Partnership distributed the investments in foreign subsidiaries to the partners effective November 1, 2006, and sold the Partnership's inter-company receivables to a revocable trust with common ownership with the Partnership. . . . The total receivable amount due from the revocable trust is $18,293,000.

The June 30, 2007 audited financial statements reflected a reduction in owner's equity by approximately $4.8 million.  The Intercompany Loan remained an asset on the balance sheet but now payable by the SSC&L Trust.

Despite the transfers which were purportedly "effective" on November 1, 2006, as late as 2008 no one could put their hands on any of the underlying transfer documents pertaining to the Assets.

At some point between February 18, 2008, and mid-March 2008, Gary Perry (Perry), Sayler's outside counsel, drafted an assignment instrument (General Assignment and Transfer) intended to effectuate a transfer of the SKFA Stock from SK Foods to SKPM

-10-

and SSRT. On March 28, 2008, Perry emailed the draft assignment instrument to Lisa Crist, an SK Foods employee, requesting that she give it to Salyer to execute. An October 27, 2008 email from Jeanne Johnston, an SK Foods employee and Salyer's assistant, to Mark McCormick at SK Foods, stated that the General Assignment and Transfer document had been "executed" and attached a copy.

Months later, on May 15, 2009, ten days after SK Foods' Petition Date, Nick Frankish (Frankish), then the CFO of Cedenco, transmitted the General Assignment and Transfer document via facsimile to Henry John Heath (Heath), one of SKFA's directors. The facsimile transmission sheet begins with the instruction "Looks like we need to advise ASIC [Australian Securities and Investments Commission] of ownership change."

On the same day, Heath sought advice from Deloitte Touche Tohatsu (Deloitte) on what steps were necessary to effect the purported ownership change from SK Foods to SKPM and SSRT in relation to the stock. At that time, Ms. Morgan (Morgan), a Client Manager in the Melbourne office of Deloitte, informed Heath that she would need to prepare the documentation required by Australian law and the SKFA constitution. Specifically, when there was a change in membership, the company was required to notify ASIC by filing a Form 484.

On July 16, 2009, Morgan sent by email the Form 484 to Frankish and Heath. On July 19, 2009, the form was forwarded to Richard Lawrence, SKFA's former CEO and director, so that he, Sayler and Heath could sign it. Morgan's July 16, 2009 email also attached other documents to effectuate the transfer of

-11-

ownership of the SKFA Stock including: (1) Standard Transfer Forms for the SKFA Stock transfer dated 11/1/2006; (2) a letter dated November 1, 2006, signed by Sayler and sent to the directors at SKFA giving notice that he held 45 SKFA shares for the benefit of SSRT (Notice Letter); (3) a Declaration of Trust dated November 1, 2006, signed by Sayler which showed the distribution of 45 shares of SKFA stock to Sayler as trustee for the SSRT; (4) Share Certificates showing that SSRT was the holder of 45 shares of the SKFA stock and SKPM was the holder of 55 shares of the SKFA stock, both "signed in accordance with the constitution of the company on [11/1/2006]"; and (5) Minutes of the Meeting of Directors (Minutes) showing that the directors of SK Foods resolved to approve the transfer of the SKFA Stock to SSRT and SKPM. The Minutes did not reflect the date on which a meeting was held.

Despite all these documents purporting to effectuate the transfer of SKFA Stock, as of the Petition Date, SKFA's company register showed SK Foods as a member of SKFA and ASIC's database showed that SK Foods owned the shares.

On August 18, 2009, Defendants filed Form 484 with the ASIC, reflecting the transfer of SKFA Stock to SKPM and SSRT as of November 1, 2006.

Documents purportedly relating to the Intercompany Loan were also prepared. Perry prepared a Debt Assignment Agreement dated November 1, 2006, whereby the SSC&L 2007 Trust agreed to become an obligor on certain receivables. This document however shows an agreement between SK Foods, the SSC&L 2007 Trust and Cedenco Foods, Ltd., a New Zealand Company (Cedenco). Nowhere

-12-

is SKFA mentioned.

On January 14, 2008, Perry sent a copy of the executed original Debt Assignment Agreement to Sayler for his records.

In March of 2009, Perry prepared an Accounts Receivable Setoff Agreement. This agreement was entered into on March 24, 2009, between SK Foods, the SSC&L 2007 Trust and Cedenco and purported to terminate the Debt Assignment Agreement dated November 1, 2006. The parties agreed that the SSC&L 2007 Trust would no longer have any liability on the previously assigned receivables. During an examination by Liquidators on October 13, 2011, Frankish testified that the purpose of the agreement was to restore the Intercompany Loan to SK Foods to allow SKFA to setoff certain trade debts SK Foods owed to SKFA against the Intercompany Loan.

Through Bills of Sale dated January 17, 2009, SKPM and SSRT sold their alleged respective interests in SKFA's Stock to MPF. MPF then sold 100% of SKFA's Stock to Fast Falcon for $1,000,000, effective June 29, 2009. The record indicates that Sayler formed Fast Falcon so that he could protect assets held by SK Foods and his other entities from his creditors. The record also shows that Fast Falcon is wholly owned by the Hawker Sydley Trust, a Cook Islands trust. The trustee of the Hawker Sydley Trust is the Asia Trust Limited.

Many of actions taken by Defendants to effectuate the transfers of the Assets and obtain distributions from Liquidators occurred after the Petition Date. The SSC&L 2007 Trust and Fast Falcon submitted POD to Liquidators for payment on account of the Assets. Defendants also submitted unsworn

declarations to Liquidators in December 2010 concerning their ownership interests. They also appeared at creditors meetings in December 2010 and February 2012 in San Francisco, CA, in connection with SKFA's chapter 15 proceeding, at which they purported to exercise the rights of holders of the Assets. After Liquidators admitted Trustee's POD for the Intercompany Loan in part, Defendants commenced a proceeding in the Federal Court of Australia, challenging Liquidators' decision and naming Trustee as a defendant. Trustee contended that these acts were in violation of the automatic stay.

**B.    The Bankruptcy Court's September 26, 2012 Ruling on its Jurisdiction and Allowing Defendants Additional Time for Discovery**

Trustee originally scheduled the MSJ for hearing on August 29, 2012, and re-noticed it for hearing on September 26, 2012.

On September 12, 2012, Defendants filed an opposition to the MSJ contending, among other things, that the bankruptcy court should dismiss or abstain from hearing the adversary proceeding and let the Federal Court of Australia decide the matter. The factual basis for Defendants' argument was that (1) SKFA was an Australian entity which had not appeared in the adversary proceeding; (2) SKFA's liquidation was under the supervision of the Federal Court of Australia; (3) ownership of the Assets was concurrently being litigated in Australia; and (4) the rights and ownership issues were governed by Australian law. Based on these facts, Defendants argued that (1) SKFA was an indispensable party under Civil Rule 19 that could not be joined because the bankruptcy court lacked personal jurisdiction

-14-

over it and (2) the bankruptcy court should abstain from hearing the matter under the doctrines of international comity and forum non conveniens.

Defendants also requested a continuance of the MSJ to conduct discovery. According to Defendants, they requested a stay of the adversary proceeding almost immediately after it was filed, which was granted. Defendants maintained that they did not conduct discovery during the stay which expired at the end of June 2012 and, shortly thereafter, on August 1, 2012, Trustee filed his MSJ. As further grounds for a continuance of the MSJ, Defendants argued that the bankruptcy court entered a Scheduling Order on August 9, 2012, which set a discovery cut-off date of January 31, 2013. As a result, Defendants asserted it would be unfair to hear the MSJ before that date. Finally, Defendants contended that Liquidators gave them no documents related to their investigation into ownership of the Assets[6] and that depositions of BMO employees were essential to oppose the MSJ because BMO encouraged the Spin Off.

On September 26, 2012, the bankruptcy court issued a

---

[6] Throughout 2011 and 2012, Liquidators investigated the circumstances surrounding the purported transfers of the SKFA Stock to SKPM and SSRT and Intercompany Loan to SSC&L 2007 Trust. They conducted extensive discovery, including taking at least seven depositions in the United States and in Australia, interviewing numerous other witnesses, and obtaining the production of thousands of documents from Trustee, BMO, and other members of Debtor's secured lender group. Defendants were represented by counsel at the United States examinations and were provided with all of the documents produced to Liquidators during their investigation. Liquidators also provided Defendants with affidavits outlining in detail their investigation and conclusions.

tentative ruling finding that Trustee's claims against Defendants all arose under Title 11 and therefore were "core" matters that it could hear and determine. The court further explained that although the ownership of the SKFA Stock was a matter of foreign law, whether property was property of the estate was governed by U.S. bankruptcy law. The bankruptcy court concluded that it had jurisdiction over the Assets under 28 U.S.C. § 1334(e)(1), which gave it exclusive jurisdiction over property of the estate, wherever located, as of the commencement of the case. The court did not address Defendants' arguments with respect to Civil Rule 19 or the doctrines of international comity and forum non conveniens.

After hearing argument from Defendants' counsel on why a continuance of the MSJ and discovery was necessary, the bankruptcy court gave them an additional thirty days to complete discovery on a limited basis. The court concluded that discovery related to BMO, i.e., what the bank officers knew or said with respect to the Spin Off, was not relevant to the claims Trustee asserted, which involved whether the transfers of the Assets were proper, whether there was consideration paid, and whether the transfers were fraudulent or avoidable.[7] The bankruptcy court excluded discovery with respect to BMO, but allowed Defendants other limited discovery. The court continued

[7] Mark M. McCormick an executive employee of SK Foods from September 2007 through March 2009, submitted a declaration dated November 18, 2010. McCormick stated that BMO specifically requested that the Australian entities be separate from U.S. operations because they were not part of the borrowing group in the USA.

-16-

the MSJ hearing to November 7, 2012, and then to November 29, 2012.

**C.    The Bankruptcy Court's Ruling on Trustee's MSJ**

On November 28, 2012, the bankruptcy court issued a lengthy and comprehensive tentative ruling granting Trustee's MSJ on the first, second, third, fifth and sixth claims for relief.  In its tentative, the court certified that its partial summary judgment was a final judgment.

On November 29, 2012, the bankruptcy court heard the matter.  On the same day, the court entered an order granting the MSJ in part and entered Partial Judgment for Trustee.  The bankruptcy court also entered a Letter of Request on the same day addressed to the Justices of the Federal Court of Australia, seeking to have them recognize the Partial Judgment and order Liquidators to do the same.[8]  Defendants timely appealed from the Partial Judgment.

---

[8] On May 30, 2013, in apparent recognition of the Partial Judgment, the Federal Court of Australia entered judgment in favor of Trustee in parallel litigation between Defendants and Trustee in that court over who owns the Assets.  The Federal Court of Australia found that the Partial Judgment barred Defendants from relitigating the ownership dispute.  SK Foods LP v SK Foods Australia Pty Ltd (In Liq) (No. 3) [2013] FCA 526 (Austl.), 2013 WL 2326997.  We take judicial notice of the Federal Court of Australia's decision in the parallel litigation pursuant to Fed. R. Evid. 201.  See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue).

-17-

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (K). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Did the bankruptcy court abuse its discretion by ruling on the MSJ without giving Defendants sufficient time to conduct discovery relevant to their case?

B. Did the bankruptcy court abuse its discretion when it refused to dismiss the adversary proceeding on the grounds that SKFA was a necessary and indispensable party under Civil Rule 19?

C. Did the bankruptcy court properly exercise its jurisdiction to determine the ownership of the Assets when those issues were being litigated in SKFA's Australian liquidation proceeding?

D. Did the bankruptcy court err in deciding that the Assets were property of SK Foods' bankruptcy estate?

E. Did the bankruptcy court err in deciding that the Trustee could avoid the prepetition transfers of property of SK Foods under § 544(a)(1)?

## IV. STANDARDS OF REVIEW

We review under an abuse of discretion standard the bankruptcy court's: (1) refusal to permit further discovery before ruling on a MSJ; (2) determinations under Civil Rule 19; and (3) refusal to abstain based on international comity. Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1024 (9th Cir. 2012)

-18-

(discovery); Am. Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1022 (9th Cir. 2002) (Civil Rule 19); Sarei v. Rio Tinto, PLC, 487 F.3d 1193, 1211 (9th Cir. 2007) (comity). A bankruptcy court abuses its discretion by identifying an incorrect legal standard, or by applying the correct standard illogically, implausibly, or in a manner without support in inferences that may be drawn from facts in the record. United States v. Hinkson, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

We review de novo choice of law questions, the bankruptcy court's decisions on summary judgment and whether property is property of the estate. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012) (choice of law); Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1221–22 (9th Cir. 2010) (summary judgment); White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008) (property of the estate). The bankruptcy court's determination that Trustee was entitled to avoid the prepetition transfers of the Assets under § 544(a) is a conclusion of law. A.O. Smith Water Prods. Co. v. Varner (In re Varner), 219 B.R. 867, 869 (9th Cir. BAP 1998).

## V.  DISCUSSION

On appeal, Defendants attempt to obtain reversal on a non-merits and merits basis. In effect, Defendants seek reversal on non-merits grounds such as forum non conveniens, comity, and the "first to file" rule contending that the bankruptcy court erred by reaching the merits of the case. On the merits, Defendants argue that under Australian law, the requirements for an equitable transfer of the Assets were met as a matter of law. We discuss each argument in turn.

-19-

**A.    Premature Summary Judgment:  Opportunity for Discovery**

Defendants' first ground for reversal is that the bankruptcy court's ruling on the MSJ was premature.  Defendants complain that the bankruptcy court gave them insufficient time to conduct discovery when the court's own Scheduling Order set a January 13, 2012 discovery deadline.  Defendants further assert that the bankruptcy court erred in limiting their discovery to depositions of persons favorable to Trustee and excluding depositions of BMO employees when BMO's knowledge of the Spin Off was the crux of their defense.  We are not persuaded.

A bankruptcy court abuses its discretion in denying discovery before ruling on a MSJ only if "the movant diligently pursued its previous discovery opportunities, and can demonstrate that allowing additional discovery would have precluded summary judgment."  In re Thorpe Insulation Co., 671 F.3d at 1024.[9]  On this record, Defendants did not meet their burden under either prong.

Defendants did not demonstrate that they diligently pursued previous discovery opportunities.  Defendants contend a stay of the adversary proceeding was imposed, but nowhere is there a

---

[9] Defendants' request for a continuance of the MSJ was raised in their opposition to the MSJ.  Generally, a party opposing a motion for summary judgment on the ground that further discovery is necessary is required to file a motion under Civil Rule 56(d).  Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986).  However, the failure to file such a motion is not a proper ground to deny discovery.  See Garrett v. City and Cnty. of S.F., 818 F.2d 1515, 1518 (9th Cir. 1987).  Defendants' failure to file a formal motion under Civil Rule 56(d) was not discussed by the bankruptcy court nor does the record suggest that this was a basis for the court's ruling.

copy of such an order in the record. Therefore, we cannot tell whether any stay prohibited Defendants from conducting discovery in the first place.

In addition, Defendants do not dispute that they were litigating the ownership of the Assets in the Australian SKFA liquidation proceeding. The record shows that Liquidators had sought and obtained recognition of the SKFA liquidation proceeding in Chapter 15 so that they could conduct extensive discovery on the ownership issues raised in this appeal and that Defendants participated in that discovery with counsel. However, Defendants offer no explanation why they did not conduct their own Rule 2004 examination of BMO, or others, in those proceedings.

Defendants also failed to demonstrate that discovery from BMO would preclude summary judgment. At the September 26, 2012 hearing, the bankruptcy court asked Defendants' counsel "what is it with the employees of Bank of Montreal that you think will aid your case? And what is it you anticipate to discover from them?" Counsel answered by stating that BMO's knowledge of the Spin Off of the foreign entity, SKFA, from SK Foods was necessary to assist them in proving their equitable assignment claim.[10] However, even assuming BMO's knowledge of, or alleged

_____

[10] In Liquidators' affidavit dated March 3, 2012, they reversed their decision in favor of Trustee. The affidavit states that part of the reason for reversing their decision was based on the discovery of a number of documents from BMO and Wells Fargo Bank concerning their knowledge of the Spin Off and its effect. Liquidators stated in the affidavit that they would voluntarily make available for inspection by the parties to these
(continued...)

-21-

consent to, the Spin Off of SKFA, we agree with the bankruptcy court that this knowledge is not relevant to the ownership issues raised in this appeal.

Although Defendants did not meet their burden for a continuance of the MSJ to conduct unlimited discovery to the January 13, 2013 discovery deadline contained in the Scheduling Order, the bankruptcy court exercised its discretion and gave Defendants an additional thirty days to conduct limited discovery. This is not a situation where the bankruptcy court disregarded Defendants' request for discovery all together and simply ruled on the MSJ. See Brown v. Miss. Valley State Univ., 311 F.3d 328 (5th Cir. 2002) (reversing district court's decision on summary judgment when district court did not rule on plaintiff's request for discovery but granted summary judgment on the grounds that there was insufficient evidence of defendant's involvement in a conspiracy, precisely the type of evidence sought by plaintiff). In sum, under these circumstances, we perceive no abuse of discretion.

**B.   Indispensable Parties:   SKFA Australian Liquidators**

Defendants' second ground for reversal is that the bankruptcy court failed to dismiss the adversary proceeding on the ground that Liquidators and SKFA were necessary and indispensable parties under Civil Rule 19. Civil Rule 19 provides in relevant part:

(a) Persons Required to Be Joined if Feasible.

---

[10](...continued)
proceedings "all of these discovery documents, subject to any obligations of confidentiality which may apply."

-22-

(1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order.  If a person has not been joined as required, the court must order that the person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

. . . .

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

. . . .

-23-

Defendants never argued that Liquidators were necessary or indispensable parties in the bankruptcy court. Therefore, this argument is waived. Orton v. Hoffman (In re Kayne), 453 B.R. 372, 386-87 (9th Cir. BAP 2011) (issue not raised in bankruptcy court is waived on appeal). However, Defendants made the Civil Rule 19 argument with respect to SKFA in the bankruptcy court.

The bankruptcy court's rulings on September 26, 2012 and November 29, 2012, do not address this argument. We may, however, consider Civil Rule 19 sua sponte. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111-12 (1968) ("[A] court of appeals should, on its own initiative, take steps to protect the absent party, who of course had no opportunity to plead and prove his interest below."). Since there is no decision to review for abuse of discretion, we address the issue as a question of law and examine it de novo.

To succeed on their claim, Defendants must establish under Civil Rule 19 that (1) SKFA is a required party and (2) the action cannot proceed, in equity and good conscience, without it. Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. State of Cal., 547 F.3d 962, 969 (9th Cir. 2008). Neither of these requirements was established here. A party might be required under Civil Rule 19 for two alternative reasons: (A) in that party's absence, the court cannot accord complete relief among existing parties; or (B) the party has a legally protected interest in the proceedings. Civil Rule 19(a)(1); Cachil, 547 F.3d at 970.

Although SKFA is not a party to the adversary proceeding, complete relief is possible between the parties before this

court.  See Pesch v. First City Bank of Dallas, 637 F. Supp. 1530, 1536-37 (N.D. Tex. 1986) (in dispute between plaintiff and defendant over ownership of company's stock, company was not a real party in interest).  Furthermore, Defendants fail to discuss what legally protected interest SKFA has in this dispute.  From a practical perspective, it is difficult to imagine how SKFA could assert any rights at all to the Assets if it were joined in this proceeding.  SKFA has asserted no claim of ownership over the Assets nor does SKFA dispute its obligation to pay the Intercompany Loan to someone or that someone owns 100 shares of its stock.  Cf. Salem Trust Co. v. Mfrs' Fin. Co., 264 U.S. 182, 190 (1924) (company was not indispensable party and had no interest in dispute where real parties in interest were arguing over assets held by the company, whose "only obligation is to pay over the amount deposited with it when it is ascertained which of the other parties is entitled to it.").

We conclude that SKFA is neither a necessary nor indispensable party to this proceeding.  We also discern no prejudice to SKFA since this litigation has proceeded with the existing parties and SKFA has not appeared on our doorstep clamoring to get in.  In short, Civil Rule 19 does not provide a basis for reversal.

**C.    The Determination of Ownership of the Assets Was Properly Before the Bankruptcy Court**

Defendants next seek reversal on the grounds that the bankruptcy court abused its discretion in refusing to dismiss Trustee's adversary proceeding under the doctrines of forum non

-25-

conveniens, comity, and the "first to file" rule.  Having concluded that it had core jurisdiction over the ownership issues, the bankruptcy court did not address any of these arguments which relate to whether its exercise of that jurisdiction was proper.[11]

While ordinarily we "do[ ] not consider an issue not passed upon [by] the [bankruptcy court]," the decision to resolve a question "for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." Singleton v. Wulff, 428 U.S. 106, 120-21 (1976).  We may resolve an issue not decided by the bankruptcy court where "the proper resolution of that issue is beyond any doubt." Id. at 121.  Further, we may resolve issues which were not resolved [by the bankruptcy court] where, "both parties have briefed and argued [the issue's] merits," and where "the benefit of a [bankruptcy] court hearing is minimal because proper resolution of the issue is clear." United States v. Brown, 739 F.2d 1136, 1145 (7th Cir. 1984).

### 1.    Forum Non Conveniens

To prevail on a motion to dismiss on forum non conveniens

_____

[11] There is no dispute that the bankruptcy court had jurisdiction to determine whether the assets were property of the estate.  Zimmerman v. First Union Nat'l Bank, N.A. (In re Silva), 185 F.3d 992, 994-95 (9th Cir. 1999).  Moreover, bankruptcy courts have jurisdiction over property of the estate located in a foreign country.  Hong Kong & Shanghai Banking Corp., Ltd. v. Simon (In re Simon), 153 F.3d 991, 996 (9th Cir. 1998) (all property of the debtor, wherever located, is in custodia legis of the bankruptcy court, including property outside the territorial jurisdiction of the United States).  Therefore, the bankruptcy court had jurisdiction to decide the merits of the dispute.

grounds, Defendants bear the burden of demonstrating an adequate alternative forum and that the balance of private and public interest factors favors dismissal. <u>Carijano v. Occidental Petroleum Corp.</u>, 643 F.3d 1216, 1224 (9th Cir. 2011).

Defendants generally aver that the Federal Court in Australia is an adequate alternative forum because the SKFA Stock is of an Australian company, SKFA, and the debt at issue is located in Australia. However, nowhere do Defendants respond to the bankruptcy court's determination that the ownership issues surrounding the Assets concerned property of SK Foods' estate which is a core matter. They do not explain why the Australian court provides an adequate alternative forum to adjudicate disputes involving core bankruptcy matters. We cannot simply assume that this is so. Defendants thus failed to establish a threshold requirement for the relief requested and, therefore, their forum non conveniens argument fails as a matter of law.

## 2. International Comity

Defendants next contend that the bankruptcy court erred by refusing to consider principles of international comity before exercising jurisdiction over the dispute. According to Defendants, the bankruptcy court's exercise of jurisdiction over the dispute inevitably created potential conflicting judgments,[12]

_____

[12] Trustee's proceeding in Australia evidently was adjourned pending the outcome of the MSJ. Further, although Liquidators had allowed Defendants' POD based on Defendants' asserted equitable ownership interest in the Assets, their decision was not a final binding decision. Under these circumstances, there
(continued...)

-27-

was a waste of judicial resources, affected the rights and liabilities of indispensable parties,[13] and encouraged forum shopping.

Under the international comity doctrine, courts sometimes defer to the laws or interests of a foreign country and decline to exercise jurisdiction that is otherwise properly asserted. See, e.g., Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa, 482 U.S. 522, 544 n.27 (1987) ("Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states.") "International comity in transnational insolvency proceedings must be considered in the context of bankruptcy theory." In re Simon, 153 F.3d at 998. "[T]he Code provides for a flexible approach to international insolvencies dependent upon the circumstances of the particular case." Id. Depending upon the circumstances, the bankruptcy court may proceed jointly with a foreign court, or may choose to exercise its power to the full extent of its jurisdiction in an appropriate case. Id.

A threshold inquiry for the doctrine to apply is that there must be a true conflict between domestic and foreign law. Id. at 999. "[W]hat [i]s required to establish a true conflict [i]s an allegation that compliance with the regulatory laws of both countries would be impossible." Maxwell Commc'ns Corp. v.

---

[12](...continued)
is little risk of conflicting decisions and inconsistencies.

[13] We have concluded that there are no indispensable parties to this litigation.

-28-

<u>Societe Generale (In re Maxwell Commc'ns Corp.)</u>, 93 F.3d 1036, 1050 (2d Cir. 1996).

Defendants do not identify any true conflict between the laws of California and Australia with respect to the underlying dispute, nor do we discern one.  Further, they made no showing of a conflict between Australian law and our bankruptcy law where extraterritorial application of § 541 expressly includes all of the debtor's property regardless of geographic location. Accordingly, we conclude that Defendants have failed to show, as a matter of law, that the threshold requirement for application of the international comity doctrine applies.

**3.    First-to-File Rule**

This rule has no application to this case.  The "first-to-file" rule is a generally recognized doctrine of federal comity "which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."  <u>Pacesetter Sys., Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 94-95 (9th Cir. 1982). However, the rule has never been applied where the two courts involved are not courts of the same sovereignty.  <u>See</u> <u>Crosley Corp. v. Hazeltine Corp.</u>, 122 F.2d 925, 929 (3d Cir. 1941), <u>cert. denied</u>, 315 U.S. 813 (1942) (rule applies when two actions are pending in courts of equal dignity within the judicial system of a single sovereignty); <u>see also</u> <u>Leomporra v. Jet Linx Aviation, Inc.</u>, 2009 WL 1514517, at *2 n.2 (D. Minn. 2009); <u>Cliffs-Neddrill Turnkey Int'l-Oranjestad v. M/T Rich Duke</u>, 734 F.Supp. 142 (D. Del. 1990) ("When related cases are before two different sovereigns, the appropriate procedure is to permit

-29-

both jurisdictions to proceed, with any decision of one becoming res judicata on the other."). Therefore, Defendants' first-to-file argument fails as a matter of law.

**D.   The Merits:  Trustee's MSJ**

We now reach the merits issues raised in this appeal.

**1.   Standards for Summary Judgment**

In reviewing the bankruptcy court's decision on a motion for summary judgment, we apply the same standards as the bankruptcy court.  Summary judgment is properly granted "when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Civil Rule 56(a), incorporated by Rule 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In making this determination, conflicts are resolved by viewing all facts and reasonable inferences in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertions by:  (A) citing to particular parts of material in the record . . .; or, (B) showing that the material cited does not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Civil Rule 56(c).

**2.   Property of the Estate**

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  § 541(a)(1).  The debtor's "equitable or legal interests" in the property of the estate are "created and

-30-

defined by state law." Wilson v. Bill Barry Enters., Inc., 822 F.2d 859, 861 (9th Cir. 1987) (citing Butner v. United States, 440 U.S. 48, 55 (1979)). Upon the filing of a bankruptcy petition, the rights of parties become fixed, subject to the rights and remedies incorporated in the Bankruptcy Code. In re Storm Tech., Inc., 260 B.R. 152, 155-56 (Bankr. N.D. Cal. 2001). We therefore consider, as we must, the rights of the parties on the Petition Date.

The property of estate issues in this appeal concern SK Foods' transfer or assignment of (1) the SKFA Stock to SKPM and SSRT and (2) the right to collect under Intercompany Loan to the SSC&L 2007 Trust.

### 3. Transfer of the SKFA Stock

#### a. The Requirements for a Stock Transfer Under Australian Law

Under Australian corporate law,[14] a company is required to set up and maintain a register of members that complies with Corporations Act s 169. See Corporations Act s 168.[15] Membership in a company results from entry of a person's name in

---

[14] Under the Corporations Act s 5, ¶¶ 4, 7, each provision of the Act applies, according to its tenor, in relation to acts and omissions outside of the Australian jurisdiction, including all incorporated and unincorporated entities, whether formed or carrying on business in Australia or not. SKFA Foods was formed pursuant to the Corporations Act.

[15] The Corporations Act s 168 sets out the information that must be recorded in the company's register. Generally, that information includes the name and address of each member, the date upon which and the number of shares allocated in each allotment of shares that takes place, the number and class of shares held by each member and the amount paid or unpaid on those shares.

-31-

the register of members.  A person is a member of a company if they:

> (a) are a member of the company on its registration; or (b) agree to become a member of the company after its registration and their name is entered on the register of members; or (c) become a member of the company under section 167 (membership arising from conversion of a company from one limited by guarantee to one limited by shares).

See Corporations Act s 231(b).

"In general, the company is not concerned with equitable interests in the shares.  The person entered in the register as the holder of security is the legal owner of the security." Business Organisations (1993) 4.3 Company Finance Chapter 6 at 249.  (Hereinafter, Business Organisations).  Under Australian law, Defendants' asserted equitable rights in the SKFA Stock did not give them the rights of membership.  RE Exclusive Master Book-Binding and Mfg. Pty. Ltd. (1977) 2 ACLR 549 (Austl.) (1977 WL 182319) (holder of unregistered shares had no entitlement in liquidation of company); Re Indep. Quarries Pty. Ltd. (1993) 12 ACSR 188, 191 (Austl.) (parties not deemed member by virtue of holding equitable interest in stock).

If there is a change in membership, transfer of the legal title must be reflected in the company's register and the company is required to notify ASIC by filing a Form 484.  See Corporations Act s 178A.  If there is a transaction pending, the legal title to registered securities remains in the person registered as the holder until a proper instrument of transfer is registered by the company.  Business Organisations at 249 (citing Sung Li Holdings Ltd. v Medicom Fin. Pty Ltd. (1995) 13 ACLC 955 (Austl.)).

It is undisputed that SK Foods was a member of record on SKFA's register since 2002 and a member of record as of the Petition Date. The Corporations Act specifies that legal title to SKFA's shares was transferable from SK Foods to SKPM and SSRT only by registering their names in SKFA's company register. That was not done here until August 18, 2009. Therefore, on the Petition Date, by statute, SK Foods was the legal (registered) owner of SKFA's shares.

However, Corporations Act s 231(b) requiring the registration of stock for purposes of membership does not define "own" for purposes of contracts between private parties. "Like any other property, company securities are, in general, capable of being held subject to equitable interests of persons other than the registered holder." Business Organisations at 249. We therefore consider whether the transfer of shares from SK Foods to SKPM and SSRT was effective in equity under Australian law and at what point in time.

### b. The Requirements for An Equitable Assignment Under Australian Law

Under Australian law, an equitable assignment requires a clear, manifest intention by the assignor to divest the assignor of property and vest it in the assignee. ABB Austl. Pty. Ltd. v Comm'r of Taxation [2007] FCA 1063 (Austl.). In addition, an assignment or conveyance of property will be effective in equity in two circumstances. The first occurs where the assignment or agreement to assign is given for valuable consideration and that consideration is paid or executed. Mid-City Skin Cancer and Laser Ctr. v Zahedi-Anarak [2006] NSWSC 844 at [161] (Austl.)

-33-

("a contract, for value, to assign legal property, effects an equitable assignment when the consideration is paid or executed; this is a case where equity regards as done that which ought to be done. . . ."). Second, when the assignor has done everything necessary to effect a transfer of legal title; i.e., all remaining steps to transfer legal title may be effected by the assignee without further involvement of the assignor. <u>Corin v. Patton</u> (1990) 169 CLR 540 (Austl.) (1990 WL 1035673); <u>see also</u> <u>Norman v Fed. Comm'r of Taxation</u> (1963) HCA 21 (Austl.) (the general rule of equity is that an effective assignment occurs only if the donor does all that, according to the nature of the property, he must do to transfer the property to the donee).

The undisputed evidence shows that SK Foods failed to effectively transfer an equitable interest in the SKFA Stock to SKPM and SSRT prior to the Petition Date.[16] The prepetition evidence of the alleged transfer of the SKFA Stock consists of accounting entries, the Management Representation Letter, and the signed General Assignment and Transfer document, which was prepared by Perry in March 2008. These documents fail to demonstrate that there was a transaction that passed an equitable property interest in the stock to SKPM and SSRT.

---

[16] Because this matter arose on summary judgment, Defendants needed to provide sufficient evidence for a reasonable fact finder to hold in their favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."). Despite having the opportunity, Defendants did not provide sufficient evidence to show that the purported transfer and assignment vested equitable title to the SKFA Stock in SKPM and SSRT prior to the Petition Date.

-34-

First, the record does not show that SKPM and SSRT gave consideration for the stock; no money changed hands. Although SK Foods' financial statement shows a reduction of owner's equity in the amount of $4.8 million, there was no reduction of SK Foods' liabilities. Without a reduction of liabilities, the accounting entries do not show valuable consideration was paid or executed.

Second, the Management Representation Letter cannot be construed as a proper instrument of transfer (which requires a simple writing under Australian law) nor was it delivered to SKFA as required under the Corporations Act s 1071B(2). At most, it states that the stock was distributed and it is addressed to SKFA's auditors. However, as demonstrated by the evidence in the record, SK Foods had not prepared or executed any instrument to actually transfer the SKFA Stock at that point in time.

Finally, the General Assignment and Transfer document which was attached to the October 27, 2008 email from Johnston to McCormick is the earliest record of a signed copy of any "transfer" document. However, standing alone, this document did not transfer the SKFA Stock to SKPM and SSRT because SK Foods had not done everything necessary to effectuate the transfer at that point in time. Additional documentation to complete the transfer was prepared postpetition.

In short, under Australian law, no effective transfer or assignment of the SKFA Stock had occurred prepetition. As a result, SK Foods held both the equitable and legal title to the SKFA Stock on the Petition Date. Accordingly, the bankruptcy

court correctly found that the SKFA Stock was property of SK Foods' estate.

### 4. Transfer of the Intercompany Loan

Defendants fare no better with their argument that SK Foods effectuated an equitable assignment of the Intercompany Loan to the SSC&L 2007 Trust prepetition. The Debt Assignment Agreement and Accounts Receivable Setoff Agreement are the only two documents purporting to transfer the Intercompany Loan from SK Foods to the SSC&L 2007 Trust. However, SKFA was not a party to the Debt Assignment Agreement which instead named the New Zealand entity Cedenco and the Debt Assignment Agreement does not mention the Intercompany Loan. As a result, on its face, this document does not show that SK Foods transferred its rights in the Intercompany Loan to the SSC&L 2007 Trust. Further, the Accounts Receivable Setoff Agreement effectively canceled the Debt Assignment Agreement as of March 24, 2009. Therefore, to the extent Defendants rely on the Debt Assignment Agreement as evidence of the transfer, their argument fails.

"[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. To enforce an equitable assignment under Australian law, there must be consideration and the assignor must have done everything necessary to effect a transfer of legal title. Here, there is no evidence of a document purporting to transfer or assign SK Foods' right to collect the Intercompany Loan to the SSC&L 2007 Trust, nor is there evidence that the SSC&L 2007 Trust gave value to SK Foods for that right. Therefore, the SSC&L 2007

Trust did not meet its burden of establishing that there are triable issues of fact with respect to the transfer of the Intercompany Loan.[17]  Thus, as a matter of law, the Intercompany Loan was property of SK Foods' estate on the Petition Date.

**5.  Applicability of § 544(a)**

Section 544 provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

    (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

    (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

    (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The § 544(a) rights of a trustee as a hypothetical bona fide purchaser or judicial lien creditor are defined by state law.

---

[17] Trustee did not seek summary judgment with respect to the amount of the Intercompany Loan that was payable to SK Foods nor do we address that issue in this appeal.

-37-

Robertson v. Peters (In re Weisman), 5 F.3d 417, 420 (9th Cir. 1993); Siegel v. Boston (In re Sale Guar. Corp.), 220 B.R. 660, 669 (9th Cir. BAP 1998).

Here, after determining that Australian law applied,[18] the bankruptcy court found that even if the SKFA Stock was transferred effective November 1, 2006, Trustee held a superior title to it as a bona fide purchaser for value under § 544(a). The court did not specify what subsection under § 544(a) it was relying upon, but the only subsection of § 544(a) addressing bona fide purchaser status is subsection (3) which relates to real property. That subsection is inapplicable to personal property.[19]

The court further found that SKPM's and SSRT's "simple omission of properly registering the purported transferees on the SKFA register of members as of the Petition Date renders the [Trustee] the victor in the priority battle." Implicit in the bankruptcy court's decision is that an unregistered transfer of stock is an "unrecorded interest," which is inferior to the interest of a judicial lien or unsatisfied execution creditor.

However, under Australian law, an unregistered transfer of stock standing alone does not change an assignee's relative

---

[18] Because the SKFA stock is of an Australian company, the applicable law is Australia's.

[19] But see Nat'l Bank of the Pac. v. W. Pac. Ry. Co., 108 P. 676 (Cal. 1910) (unregistered transfers of stock are valid as against all the world, except subsequent purchasers in good faith, without notice); Farmers' Nat'l Gold Bank v. Wilson, 58 Cal. 600 (Cal. 1881) (a purchaser under an execution sale, without notice of transfer, would take the stock free from the claims of the transferee).

rights vis-a-vis an attaching or execution creditor. In Australia, a judgment creditor must obtain a charging order. The charging order only operates to charge the beneficial interest of the person against whom the order is made. It is not possible to obtain an effective charging order over unregistered shares of stock where the person against whom the order is made holds them as bare trustee.[20] See Hawks v McArthur [1951] 1 All E.R. 22 (Austl.).

In Hawks, the shareholder sold his shares to two persons in contravention of provisions in the company's articles. Because of the contravention, the transfer was never registered, although the purchasers had paid the shareholder the full purchase price. A judgment creditor of the shareholder-seller sought to execute on the shares still registered in the shareholder-seller's name. The court found that although the stock was still in the shareholder-seller's name, the shareholder-seller had received something for the sale of the shares and had executed a transfer under seal. Therefore, the court concluded that the equitable rights of the purchasers prevailed over the equitable or quasi-equitable rights of the judgment creditor under the charging order, because at the time when the charging order was obtained, the rights of the purchasers had already accrued.

---

[20] Similarly, in California, a judgment creditor who attempts to levy against a debtor's personal property in satisfaction of his debt obtains a lien only upon the debtor's interest. Where no actual interest is shown, the attaching creditor gets nothing. Henry v. Gen. Forming, Ltd., 33 Cal.2d 223, 226 (Cal. 1948).

The priority rule in Hawks does not assist SKPM and SSRT in this case. To have priority over a judgment lien or execution creditor, SKPM's and SSRT's equitable rights in the stock must have accrued prior to the Petition Date, i.e., consideration must have passed and SK Foods must have done everything necessary to effectuate the transfer at that point in time.[21] These requirements were not met. Thus, the transfer of the SKFA Stock to SKPM and SSRT was not effective prepetition. Under these circumstances, Trustee would prevail under § 544(a)(1)-(2). Accordingly, we agree with the bankruptcy court's conclusion, albeit for different reasons,[22] that as a matter of law, Trustee's rights and powers under § 544(a)(1)-(2) would allow him to defeat any interest SKPM and SSRT may claim in the SKFA Stock.

We do not perceive that a different analysis is warranted for the Intercompany Loan. There was no effective prepetition transfer of the right to collect under the Intercompany Loan as evidenced by the lack of consideration and documentation.[23] Therefore, § 544(a)(1)-(2) would give Trustee superior rights in the loan.

---

[21] Under California law the result would be the same. See generally Rony v. Yucca Water Co., 220 Cal.App.2d 613 (1963).

[22] We may affirm on any ground supported by the record. Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004).

[23] Defendants did not assert a security interest in the Intercompany Loan. Therefore, an analysis relating to the perfection of payment intangibles under the provisions of the California Commercial Code is unnecessary.

-40-

### 6. Applicability of §§ 362 and 549

Under § 362(a), the filing of SK Foods' bankruptcy petition stayed any act by Defendants to, inter alia, obtain possession of, perfect an interest in, enforce a lien against, exercise control over, or take any other action to deprive SK Foods of the SKFA Stock. In the Ninth Circuit, actions taken in violation of the automatic stay are void. Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992).

However, "[§] 362's automatic stay does not apply to sales or transfers of property initiated by the debtor." Id. at 574. Instead, under § 549(a), the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that was not authorized by the bankruptcy court. Aalfs v. Wirum (In re Straightline Inv., Inc.), 525 F.3d 870, 877 (9th Cir. 2008) (citing §§ 549(a)(1), (2)(B)).

Here, the record shows that other documents required to complete the transfer of the SKFA Stock from SK Foods to SKPM and SSRT under the Corporations Act and the SKFA constitution were drafted in July 2009, two months after the Petition Date. Attached to Morgan's July 16, 2009 email to Frankish were the Standard Transfer Forms, the Declaration of Trust, the Share Certificates and the Minutes. These attempts to transfer the stock were actions to deprive SK Foods of the stock postpetition, undertaken by the related entities, not the debtor, and are therefore void in violation of the automatic stay.

Defendants make no arguments with respect to the bankruptcy court's findings regarding violations of the automatic stay on

-41-

appeal. "Issues not raised in the opening brief usually are deemed waived." <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1367 (9th Cir. 1995). The bankruptcy court properly concluded that § 549 was not implicated because the postpetition acts to transfer the stock were not undertaken by the debtor. This conclusion was not erroneous.

**VI.  CONCLUSION**

For these reasons, we AFFIRM.